THE TRAVELERS INSURANCE COMPANY, Appellant, Impleaded with
   OAKES MANUFACTURING COMPANY, Plaintiff, *v.* PEET & POWERS,
   Respondent.

First Department, April 21, 1922.

Negligence — proximate cause — action to recover for death of employee
   in dye factory, killed when building burned — fire caused by ladder
   in use by employee of defendant, an outside contractor, falling and
   breaking bottle of bisulphite of soda standing on kegs of chlorate of
   soda — negligence of defendant's employee and proximate cause of fire
   questions for jury — wrongdoer only responsible for natural and proxi-
   mate consequences of his misconduct.

In an action to recover for the death of an employee in a dye factory, it appeared
   that a ladder in use by an employee of the defendant, an outside contractor,
   who was installing some electrical fixtures in the dye factory, fell on a bottle
   of bisulphite of soda which was standing on some kegs of chlorate of soda,
   breaking the bottle, the contents of which spilled over the kegs and floor; that
   a fire which broke out shortly in the vicinity of the kegs, destroyed the building
   and caused the death of the deceased. The kegs were not tight enough to exclude
   a liquid. The mixture of the bisulphite and chlorate was a competent produc-
   ing cause of the fire, but the dye manufacturing company had never mixed the
   two chemicals and its manufacturing superintendent who had general charge of
   the supplies was not aware before the day of the fire that, if the bisulphite
   came in contact with the chlorate, a fire might result.

*Held,* that it was a question of fact for the jury to decide whether the fall of the
   ladder was due to the negligence of defendant's servant in the course of his
   employment, and, if so, whether the negligent act was the proximate cause
   of the fire which resulted in the death of the deceased.

*It seems,* that in some cases the rule, that one is only liable for such damages
   as could be reasonably foreseen or contemplated, has been loosely applied.
   The best statement of the rule is that a wrongdoer is responsible for the natural
   and proximate consequences of his misconduct; and what are such consequences
   must generally be left for the determination of the jury.

APPEAL by the plaintiff, The Travelers Insurance Company,
from a judgment of the Supreme Court in favor of the defendant,
entered in the office of the clerk of the county of New York on the
17th day of March, 1921, upon the dismissal of the complaint by
direction of the court at the close of plaintiff's case.

*Benjamin C. Loder* [*E. C. Sherwood* of counsel; *Clarence S. Zipp*
with him on the brief], for the appellant.

*Daniel R. Harvey* of counsel [*James B. Henney* with him on the
brief], for the respondent.

GREENBAUM, J.:

The action is to recover damages for the death of one Frederick
Christman, alleged to have been caused by the negligence of the
defendant.

The facts adduced upon the trial are that Frederick Christman,
an employee of the Oakes Manufacturing Company, which was

engaged in the business of manufacturing dyes, met his death on the 17th day of October, 1916, in a fire which destroyed one of the company's buildings at Astoria, L. I., while he was engaged in his work on an upper floor of the building, from which he was unable to escape. He left surviving him a widow and children, to whom an award was made under the Workmen's Compensation Law.

The cause of action for the death of Frederick Christman was duly assigned to the appellant, a surety company, pursuant to the provisions of section 29 of the Workmen's Compensation Law (as amd. by Laws of 1916, chap. 622, and Laws of 1917, chap. 705).

The testimony of the plaintiff will be briefly summarized. Charles Lee, a foreman in the employ of the Oakes Manufacturing Company, testified that at about noon of October 17, 1916, he was engaged in work at his desk on the first floor of the building where the accident occurred; that one Joseph Ross, an employee of the defendant, Peet & Powers, electrical contractors, was at that time engaged in installing electric light wires in the room on the first floor, and in that connection was using a ladder near the witness' desk; that alongside the desk there were five kegs, each about twenty inches high and ten or twelve inches across the head; that on top of the kegs stood a gallon bottle containing approximately two and one-half pounds of bisulphite of soda, a liquid which was used in the dyeing business.

The witness further testified that the ladder which the defendant's employee was using suddenly fell and struck the bottle of bisulphite and broke it so that its contents spilled and " ran over the kegs and on the floor." Shortly thereafter smoke and flame appeared where the kegs stood. The witness ran for the fire hose, but the room was so quickly filled with smoke and flame that, before he could apply the hose, he was driven out of the office and the entire building was quickly consumed by the fire. The kegs which contained the chlorate of soda were of wood, and the heads of the kegs consisted of two or three pieces. The kegs were lined with paper and were not water tight. The paper was intended as lining to keep the sodium chlorate in crystal form and to prevent any of it from sifting out.

A witness, Joseph Ross, testified that on the occasion in question he was in the employ of the defendant, and was at the time working in the Oakes Manufacturing Company warehouse, on the ground floor, engaged in installing a conduit on the ceiling. In the course of this work he used a straight ladder about thirteen or fourteen feet long, and, because he found that it was too short to enable him to reach the ceiling, he used a platform about one foot high, two feet wide and three feet long, upon which the ladder rested.

He also testified as follows: " Q. Tell us how that ladder came to fall? A. In raising the ladder, and trying to rest it on the open beam, it didn't strike the beam; it didn't rest there, it went forward. * * * Raising the ladder, I don't know whether I had it on the platform or on the floor, that I don't remember."

He further stated that the top of the ladder missed the beam and came down and struck the bottle; that he " was putting up " the ladder alone; that he was the helper; that the electrician was there, but that he " didn't get him to come and help him " put up the ladder; that he started to raise it to put it on the beam, when " it missed the beam, there was too much weight on the ladder and it was going forward," and that he " couldn't hold it." After the ladder fell he heard someone yell " fire," and he went to help get the hose. When his ladder fell it broke a bottle. The fire was " where the ladder fell," around where the kegs were, by the desk. He saw a " very heavy smoke; I think I saw fire, I don't remember."

Laforrest H. Howe, manufacturing superintendent of the Oakes Manufacturing Company, testified that he had general charge of the supplies of the company; that the chlorate of soda was kept back of Mr. Lee's desk. The bottle of sodium bisulphite was kept at that particular place because it was a handy place to keep it, as there was occasion to use it now and then, and the foreman near whose desk it stood had charge of the bottle. The main supply was kept outside in barrels, because of a disagreeable odor which it emitted, something like that of brimstone. He had no knowledge before the day of the fire that, if the bisulphite came into contact with the chlorate, a fire might ensue.

The kegs containing the chlorate were not tight enough to exclude a liquid. The main supply of bisulphite, which was kept elsewhere in barrels, was used in making steam black. In the use of these two substances they had never had occasion to mix them, and had never done so.

Dr. Beans, professor of chemistry at Columbia University, testified as to the nature and properties of sodium bisulphite and sodium chlorate, and that the spilling of the bisulphite upon the kegs containing the other was a competent producing cause of the fire.

At the close of the plaintiff's case the defendant moved to dismiss the complaint as to the plaintiff, upon four grounds: 1. " That a man is only responsible for results which the ordinary person should know about and expect and anticipate * * *." 2. " That the approximate cause of the accident was the carelessness of the Oakes people in placing these two chemicals in close proximity

with one another  *  *  *." 3. " That the Travelers' Insurance Company here is nothing but a surety for the Oakes people; they stand in their shoes absolutely  *  *  *." 4. " That there is no negligence shown on the part of this electrician for Peet & Powers."

This court heretofore affirmed, without opinion, a judgment of nonsuit in the case of *Lindsay* v. *Peet & Powers* (187 App. Div. 946), which was an action brought to recover damages for the death of one Catherine J. Lindsay, resulting from the same fire in which Christman lost his life. An examination of the record in that appeal discloses a situation which is somewhat different from that before us. It appears in that case that Joseph Ross, the defendant's employee, who it is claimed negligently allowed the ladder to fall, was not called as a witness, by reason of his absence in France in war service. It also appears that questions, propounded to the chemist called by the plaintiff for the purpose of showing that the contact of the fluid sodium bisulphite with the chlorate of soda in the kegs would be a competent producing cause of the fire, were excluded because of failure of proof that the fluid bisulphite had come into contact with the chlorate of soda.

The question in this case is whether the falling of the ladder was due to the negligence of the defendant's servant and was the proximate cause of the fire which resulted in the death of Frederick Christman.

Respondent urges that " the courts in applying this rule of proximate cause as the occasion has arisen, have defined the rule in various ways, but underlying all definitions of the rule is found the consideration of whether or not the accident, or the resulting injury, was reasonably to be foreseen or anticipated."

It is true that many cases, in discussing the question of proximate cause, state that it is important to determine whether the resulting injury was reasonably to be foreseen or anticipated. But a study of the cases in which that or similar language is used discloses that in some of them it was loosely applied, and that the rule is properly applicable in the determination of the question whether the original act which set in motion other causes, which in their turn caused the damages complained of, was the proximate cause of the accident. A very good illustration of what we have in mind is furnished by the case of *Leeds* v. *New York Telephone Co.* (178 N. Y. 118, 122). There the defendant, long before the happening of the accident, had attached a telephone wire to an old, defective chimney on a building, about 39 feet above the ground, and strung the wire across the street to the top of another building, at a height of 100 feet from the ground. About two years after this wire had thus been attached, it was struck by the boom

of a derrick used in hoisting materials in the construction of a building which was being erected on the opposite side of the street, with such force as to pull down the chimney, so that the plaintiff, who was passing along the street, was injured by the bricks which fell from the chimney. The court held that the negligence of those operating the derrick must be deemed an intervening and the responsible cause of the accident, although there was evidence that the chimney had been weakened by age and decay. The court held further that, even if the telephone company was negligent in maintaining this wire upon the chimney, which an inspection would have shown to have become unsound, its omission of the duty of inspection was not the proximate cause of the fall of the chimney, although remotely it may have been a cause, but proximately it was simply the intervention of the derrick boom, carelessly allowed to swing out in the street, which enabled the accident to occur; and that the person injured could not therefore, maintain an action against the telephone company.

The misapplication of the rule that one is only liable for such damages as could be reasonably foreseen or contemplated is admirably treated in *Ehrgott* v. *Mayor, etc.* (96 N. Y. 264, 280, 281, EARL, J., writing), as follows: " It is sometimes said that a party charged with a tort, or with breach of contract, is liable for such damages as may reasonably be supposed to have been in the contemplation of both parties at the time, or with such damage as may reasonably be expected to result, under ordinary circumstances, from the misconduct, or with such damages as ought to have been foreseen or expected in the light of the attending circumstances, or in the ordinary course of things. These various modes of stating the rule are all apt to be misleading, and in most cases are absolutely worthless as guides to the jury. (*Leonard* v. *N. Y., etc., Tel. Co.*, 41 N. Y. 544.) Parties, when they make contracts, usually contemplate their performance and not their breach, and the consequences of a breach are not usually in their minds, and it is useless to adopt a fiction in any case that they were. When a party commits a tort resulting in a personal injury, he cannot foresee or contemplate the consequences of his tortious act. He may knock a man down, and his stroke may, months after, end in paralysis or in death — results which no one anticipated or could have foreseen. A city may leave a street out of repair, and no one can anticipate the possible accidents which may happen, or the injuries which may be caused. Here, nothing short of Omniscience could have foreseen for a minute what the result

50

and effect of driving into this ditch would be.   *   *   *   The best statement of the rule is that a wrongdoer is responsible for the natural and proximate consequences of his misconduct; and what are such consequences must generally be left for the determination of the jury.   (*Milwaukee & St. P. R. Co.* v. *Kellogg*, 94 U. S. 469.)"

It was a question of fact for the jury to decide whether the fall of the ladder which struck the bottle of bisulphite of soda was due to the negligence of the defendant's servant in the course of his employment, and, if so, whether the negligent act was the proximate cause of the fire, which resulted in the death of Christman.

The judgment appealed from must be reversed and a new trial ordered, with costs and disbursements to appellant to abide the event.

DOWLING, LAUGHLIN, SMITH and MERRELL, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide event.