HELEN TIMERSON, Claimant, *v.* STATE OF NEW YORK, Defendant.
(No. 22022.)

CLIFFORD TIMERSON, Claimant, *v.* STATE OF NEW YORK, Defendant.
(No. 22023.)

DORIS JOHNSON, Claimant, *v.* STATE OF NEW YORK, Defendant.
(No. 22024.)

LESLIE JOHNSON, Claimant, *v.* STATE OF NEW YORK, Defendant.
(No. 22025.)

State of New York, Court of Claims, November 21, 1932.

*Horace M. Stone* and *Frank J. Cregg,* for the claimants.

*John J. Bennett, Jr., Attorney-General [John L. Campbell, Deputy Assistant Attorney-General,* of counsel], for the State of New York.

ACKERSON, J. The demands set forth in these claims are for damages alleged to have been suffered by reason of a defect in a

State highway between Baldwinsville and Plainville in the county of Onondaga and State of New York. As the claims are all based on personal injuries and property damage suffered in the same accident they were tried together.

They were filed pursuant to a special act of the Legislature, known as chapter 748 of the Laws of 1931, which conferred jurisdiction on the Court of Claims to hear, audit and determine the four claims and which further provided that " if the court finds that the injuries were received by reason of the negligence of the state, its officers and agents in any manner and at the time claimants were free from negligence contributing to the injuries, damages therefor shall constitute a legal and valid claim against the state and the state shall be deemed liable therefor and the court may award to and render judgment for the claimants against the state in such a sum as in its judgment will properly compensate the claimants for the damages sustained."

It is established by the evidence taken on the trial that at about three o'clock in the morning of April 6, 1929, the four claimants were traveling in an easterly direction on the said Plainville-Baldwinsville State highway in an automobile driven by the claimant Clifford Timerson; that it had been raining hard during the night and was then raining some; that the concrete pavement was in perfect shape so far as the claimants could see as they came along the highway and approached the culvert near the Merrifield farm about three miles west of Baldwinsville. As they were passing over this culvert, however, the concrete pavement suddenly collapsed and the automobile with its occupants was precipitated into the stream some ten or twelve feet below. All the claimants were badly injured.

Upon investigation of the situation it appeared that the flood of water caused by the rain that night was too great to pass through the culvert throat and that it had reached such an elevation on the upstream end of the culvert that it had washed out all of the earth fill over the culvert which had supported the cement surface of the highway and left this part of the roadway suspended over this hole in the road being kept in place by the cohesive power of the cement alone with nothing to prevent its breaking down as soon as any weight was put upon it.

The distance between the top of the box culvert and the cement surface of the road was about eight feet. That space had been filled in with earth which constituted the embankment over the culvert and on the top of which the cement part of the roadway had been constructed.

The learned Deputy Attorney-General, who represented the

State on the trial, very earnestly contended that the State cannot be held liable for this accident because it had no notice, either actual or constructive, of the condition which caused the accident, nor did it have any notice of any defect in the highway which would be likely to cause such an accident.

The only authorities cited on claimants' brief to sustain their claim of the State's liability for this accident are the cases of *De Pasquale* v. *State* (133 Misc. 215) and *Ristau* v. *Coe Co.* (120 App. Div. 478; affd., 193 N. Y. 630).

These cases relate to the application of the principle of *res ipsa loquitur*. The State contends that the principle of *res ipsa loquitur* has no application to the facts of this case and, therefore, the cases cited cannot be used as authorities in the disposition of these claims. The State is undoubtedly right about that. It is clear to me that if the State cannot be held liable for this accident without proof that it had timely notice of the washout at this culvert, and without the application of the principle of *res ipsa loquitur*, then these claims must be dismissed. (*Farrell* v. *City of New York*, 113 App. Div. 687; *Slater* v. *Barnes*, 241 N. Y. 284.)

The claimants, however, do not base their claim of the State's liability in the premises wholly on either one or both of those propositions. Their contention is, as I understand it, that the State is liable for this washout at this culvert and the resulting accident in which these claimants were injured because of negligence — negligence on the part of the State both in constructing this culvert and adjacent roadway and negligence in maintaining it. A large part of the testimony they have offered has been to establish those two propositions.

They have shown that originally this culvert was constructed some thirty or forty years ago, what is known as a box culvert constructed of cobblestones laid up with sand and lime mortar, the throat of which culvert was two feet wide and three feet high with flagstones on the top and some seven or eight feet of earth on top of that over which passed the old dirt road, the culvert then being twenty-nine feet long. In this condition it remained without repair or change so far as the evidence shows from the time it was built down to the time this road was improved and reconstructed in 1920 and 1921.

Before reconstructing the road the State sent out an engineer who made a survey from which plans were made to be followed by the contractor. These plans provided that this culvert should be extended eleven feet on one side and twelve feet on the other side, making it fifty-two feet long, and provided for increasing the depth of the fill over it by two or three feet. This extension was to be

accomplished by the use of concrete but the old masonry was to remain intact.

It does not appear that any engineer of the State ever made a thorough examination of this old masonry culvert either before or after the new road was built. It does appear, however, that Mr. Martin, who was then superintendent for the contractor, did make some examination of it, at least enough to satisfy him that it ought to come out and he so advised the State Engineer on the job, who would not consent to it. Mr. Martin says he saw that the mortar was falling out from between the stone, that it did not look good to him and he told the State representative that in his judgment it ought to come out.

However, while it was allowed to remain, Mr. Martin says that they did excavate the old embankment down to flagstones on the top of the culvert and, when the concrete ends were put on, the embankment over it was made with sand known as blow sand which was excavated from the side of the road near the culvert. The importance of this testimony of Mr. Martin that they excavated this old earth embankment down to the top of this culvert must not be overlooked. It is a very significant fact. That excavation undoubtedly made possible what later occurred. By such excavation what otherwise would have been a hard core in this embankment of sand was removed. That made possible the sudden washout of this sand embankment on the night in question. The evidence discloses the fact that this sand when saturated with water would run like water or quicksand and while they were building the embankment they had a rainstorm and that actually happened. They proceeded, however, and completed this embankment of that very light sand. That afterwards the shoulders of the road made of this material washed out so that they had to rebuild them with gravel.

The claimants contend that the culvert was not made large enough and that this is shown by the fact as they established on the trial that after any considerable rain the water would back up and be held back by this culvert and it would take it some time to run off after the rain ceased. That this was a fact which the State knew or should have known when it constructed the new road. For some years before this accident the claimants contend the old masonry walls of this culvert were going to pieces. They have offered testimony showing more or less obstruction in that part of the culvert; showing that the mortar was coming out of the wall and that the stones in the wall were protruding out into the throat of the culvert so as to form an obstruction to the free passage of water. They have shown that this mortar was not only made

of sand and lime but had so deteriorated that it would crumble to pieces when subjected to slight pressure and their witnesses who examined this culvert after the accident say the walls had the appearance of having caved in.

There is no testimony in the case to show that the State ever made any examination of this culvert either before or after the State highway was constructed that could or would reveal the actual condition of this old masonry.

While the evidence which points to the negligence of the State in constructing this culvert and highway at the place where this accident happened is not as full and clear as might be desired, yet such negligence on the part of the State seems to be fairly well established and also that such negligence was the proximate cause of the disaster mentioned in these claims.

The only conclusion it seems to me that can be drawn from the evidence is that the State was guilty of negligence in the construction and maintenance of this highway in the following particulars, to wit:

1. Because it incorporated this ancient defective masonry in its new culvert.

2. Because it did not enlarge this culvert, which it could easily have ascertained was never large enough to accommodate the run off after a heavy rainstorm.

3. After incorporating the old culvert in the new road the State was guilty of further negligence in not keeping the throat of the culvert clear and the old masonry in good repair.

4. The construction of the embankment over this culvert with what is known as "blow sand" was an act of negligence on the part of the State for which there seems to be no excuse or extenuating circumstances. It was demonstrated right before them while they were constructing the embankment what effect water would have upon it because during the process of that construction they encountered a rainstorm which washed it out like so much water. From that experience the State should have known that just what did happen would happen when the water rose above that culvert onto that embankment.

This embankment was washed out in a very short time. Vehicles went over this culvert safely on this night in question a short time before the accident, showing that when the water got high enough this "blow sand" embankment simply melted away.

From this indictment of negligence which the claimants make against the State there can be no escape. The State knew from the experience it had with this "blow sand" in the shoulders of

the road and in this fill when it was being constructed just what would be the result if water ever got to it.

The claimants having established that the original construction and maintenance were improper and negligent and that the same was the proximate cause of the accident it becomes unnecessary for them to show that the State had notice of this particular washout on the night in question.

The only further question with which the court is confronted here is the question of damages. That is a serious question in these claims and one that is difficult to determine.

After a careful consideration and review of all the testimony relating to the injuries of these claimants we have reached the conclusion that they should be compensated as follows: Clifford Timerson, $10,169.75; Helen Timerson, $1,500; Leslie Johnson, $4,028.65; Doris Johnson, $10,000.

Findings of fact and conclusions of law may be filed herein in accordance with the decision of the court as above set forth.

BARRETT, P. J., concurs.