GEORGE A. LOGAN, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 24407.)

Court of Claims, April 24, 1937.

*Ryder & Donohoe* [*John P. Donohoe* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*Burns F. Barford, Assistant Attorney-General,* of counsel], for the defendant.

RYAN, J. In 1936, and for many years prior thereto, claimant was the owner of certain premises in the village of Nelsonville, town of Phillipsburg, in Putnam county. He was a dealer in granite memorials and on these premises he had a shop building. Outside of the building and adjacent thereto he displayed some of the monuments in which he dealt. His premises were roughly triangular. The apex of the triangle laid between the Cold Spring Cutoff road, upon which claimant's property abutted, and Foundry brook, which flowed down from the northeast, passed under the highway, and flowed southwesterly, skirting claimant's premises in the rear.

This brook drained an area of approximately five square miles of mountainous terrain. Above its intersection with the highway it was augmented by several tributaries. Where the brook passed under the highway just above claimant's premises it flowed through a stone culvert about thirty-five feet in length. This was made of loose stones or boulders laid one on top of another without mortar except that the lower eight feet of the culvert had been rebuilt of concrete in about 1922. A fisherman who walked through the culvert in the spring of 1935 testified that then some of the stones projected from their places in the wall and that one large boulder had fallen and was lying in the bottom of the stream at about the middle of the culvert.

On occasion Foundry brook got out of bounds. When it did, this culvert was inadequate to take the water which then overflowed the road and cut a fissure through the highway at a nearby point and returned to the channel of the stream below. Such happenings occurred in the years 1898, 1906, 1916 and 1922 and on other occasions.

By official order dated April 15, 1935, the State of New York took over for maintenance from the town and county authorities the highway passing in front of claimant's property and including the culvert in question. At that time it was a gravel road, but during the year 1935 the State improved it with a macadam top. During the progress of construction the claimant told the State's engineer in charge that the culvert was too small, never was large enough to take the supply of water, and besides was poorly constructed. The engineer's reply was that the State did not have the money to put in a new bridge at that time. The record shows that in making the survey for the road construction the culvert was omitted "for a further bridge study on it." In other words, the State took over the highway, resurfaced it with a hard top, assumed and adopted the old culvert but did nothing to it in the way of construction. It did not even measure it nor inspect its condition.

On March 12, 1936, following a rapid thaw of a large quantity of snow and a rainfall in three days of two and eighty-nine one-hundredths inches, Foundry brook was in flood. The waters upon reaching the culvert burst out of it at about the center and flowed over the top of the road which, being resurfaced with a hard material, did not give way as it formerly had done. Instead of returning to the creek channel, the waters flowed down the highway and over claimant's premises, carried the monuments which stood thereon down into the gulley at the rear, washed out a stone retaining wall, tore down an ornamental parapet and otherwise damaged claimant's

property. When the flood waters had subsided, the State's engineers found that two granite slabs had dropped down into the center of the culvert and blocked it.

An inadequate culvert is a defect in the highway. (*Bowman* v. *Town of Chenango*, 227 N. Y. 459; *Borden* v. *State of New York*, 113 Misc. 232.) So this court had jurisdiction of a claim based on such a defect filed within six months as required by old section 15 of the Court of Claims Act when the injury occurred within the dates specified by the Highway Law, former section 176, now section 58. (*Ortalano* v. *State*, 150 Misc. 144.) But the State was not liable for damages suffered as the result of a surface defect in the highway when the injury occurred outside the maintenance period. (*Hinds* v. *State*, 144 Misc. 464; affd., 240 App. Div. 742; affd., 264 N. Y. 525.) Section 12-a of the Court of Claims Act did not repeal section 176 of the Highway Law. The two statutes must be read together. (*Hinds* v. *State, supra; Miller* v. *State*, 231 App. Div. 363, affg. 137 Misc. 768, *Killoran* v. *State*, 155 id. 26.)

It may be argued that the more recent decision by the Appellate Division in the Third Department in *Consiglio* v. *State* (247 App. Div. 832) overrules the determination of this court in both the *Ortalano* and *Killoran* cases. If so, does it not at the same time conflict directly with the affirmances by the same departments in the earlier cases of *Miller* and *Hinds*, cited above?

Reasoning from these authorities, must we reach the conclusion that this claim must be dismissed? Claimant's injuries occurred March 12, 1936, outside the maintenance period prescribed in the Highway Law. They were due to an inadequate culvert which constituted a defect in the highway. Therefore, argues the learned Deputy Attorney-General, there is no liability on the part of the State.

But section 12-a of the Court of Claims Act, pursuant to which this claim is filed, waives the State's immunity from liability for the torts of its officers and employees at all times whether they concern highway maintenance or other responsibilities. (*Miller* v. *State, supra*.) Hence if it can be said that the State's officers or employees were guilty of misfeasance or negligence in any manner which caused or contributed to the claimant's injuries, he is entitled to recover herein.

In determining whether or not the State's employees were negligent, consideration must be given to the question of notice. Proof of the prior occasions when Foundry brook went out of bounds and cut a fissure in the road was received over the objection of defense counsel. He argued and still argues that as these incidents all took place many years before the State took over the highway they

should not be considered. But whether or not the State had actual notice of prior floods and their effects, its officers and employees were put on inquiry regarding them. The nature of the stream, the appearance of the country through which it ran, indicated the necessity of a survey of the watershed. Reasonable prudence would have disclosed to the State's engineers what might be expected to occur in times of freshet. At the very least they should have inspected the existing culvert. To say that the survey was not made and the culvert not reconstructed because the funds were not then available presents no sufficient excuse. Money was expended in 1935 for the resurfacing of the highway. The exercise of reasonable care required the construction of a safe and adequate bridge for this lively and tempestuous stream as the first order of progress.

This was not a mere matter of administrative discretion. The duty of inspection of the highway to determine if it was properly constructed was placed on the highway commissioner by the Highway Law, former section 182, now section 64. The commissioner's official order certified that the highway had been inspected by the district engineer and that he had recommended that it be taken over for future maintenance. The recommendation and order included specific reference to the culvert in question. It was part of the highway and it was not properly constructed. To incorporate it into the newly-surfaced road was an act of negligence. (*Timerson* v. *State*, 145 Misc. 613.) For such an act of negligence on the part of its officers and employees the State has assumed liability. (*Jackson* v. *State*, 261 N. Y. 134.) That it may be said at the same time that such negligence brought about a defect in the highway does not absolve the State therefrom.

There is one more defense offered by the State. The flood was unusual for the season of the year. It was contributed to by the thawing of large quantities of snow. The Attorney-General asks us to find that it was unprecedented. The record does not support such a finding. The State could reasonably have contemplated the consequences which followed it. Hence liability attaches. (*Mendelson* v. *State*, 218 App. Div. 210; affd., 245 N. Y. 634; *Daly* v. *State*, 226 App. Div. 154; *Lohmeyer* v. *State* [*Claim No. 24088*], unreported.)

The claimant is entitled to an award.

BARRETT, P. J., concurs.