JOHN LEBOEUF, as Administrator, etc., of HELEN LEBOEUF, Deceased, Claimant, *v.* THE STATE OF NEW YORK, Defendant. (Claim No. 24135.)

Court of Claims, November 10, 1938.

*Moore & Herron [Daniel Scanlon* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General [James H. Glavin, Jr., Assistant Attorney-General,* of counsel], for the defendant.

GREENBERG, J. This claim is to recover damages sustained by reason of the death of Helen LeBoeuf, the wife of John LeBoeuf, the claimant herein, which resulted from an accident, while the deceased was operating an automobile on August 10, 1935, at or about three P. M., on the State highway between Felts Mills and Great Bend, Jefferson county.

The deceased, a resident of Tupper Lake, had left Ithaca at or about eight-thirty A. M., homeward bound, and driving alone. She was thereafter seen at Watertown at about one-thirty P. M.; had left Watertown at about two P. M., arriving at the home of Mrs. Feistel, an aunt of claimant, at Felts Mills, about two-fifteen or two-thirty P. M. The Feistel home was about 500 feet north of the State highway, between Watertown and Carthage, on which road the accident happened. The weather had been hot all day, and it had begun to rain at about the time Helen LeBoeuf arrived at the Feistel home. When she left the Feistels, at about two-forty-five or three P. M., she drove to the State highway, where she made a dead stop, turned to the left, and went up the State road in an easterly direction toward Great Bend, and was not driving fast.

Shortly afterwards, Sidney F. Virkler, riding in a cattle truck on the same highway in the same direction in which Helen LeBoeuf was traveling, approached the point in the road near the Wadsworth home; after passing over the crest of the hill, he noticed the LeBoeuf automobile headed back in the direction of Watertown or opposite that to which the deceased was traveling after she got on the State highway. Prior to that time, Virkler had seen nothing of Helen LeBoeuf or the car in which she was riding. The automobile was on the south side of the road with the two left wheels against the bank on the side of the road and the right wheels slightly on the pavement. Helen LeBoeuf was out of her automobile up against the bank with her feet against the front wheel, and called to Virkler as his truck went by. Virkler jumped off the truck and ran over to her; she asked him to stop the ignition of the car and to get her to a hospital, stating that her jugular vein was cut. She was holding her left-hand side of her throat and seemed to be pinching it between the thumb and forefinger of her left hand. Without saying anything to any one about how the accident happened, she

lapsed into unconsciousness and died from exsanguination, just after the doctor arrived.

The automobile in which deceased was driving was in good running order, had on two brand new tires and two other tires purchased about three months prior to the accident.

It is claimant's contention that the automobile in which deceased was driving, by reason of the conditions existing at the approach to the crest of the hill on said highway, and beyond the said top of the hill, skidded and turned around in a direction opposite to which she was driving, hitting the bank on the side of the road, causing a window in the left-hand side rear door of the automobile to break, as a result of which the jugular vein on the left-hand side of the deceased's neck was cut, from which she bled to death.

There being no eye witnesses to the accident, a case of this kind is always very perplexing, and the proof of the accident must depend upon circumstantial evidence. It is sufficient if certain facts are established so that from a reasonable inference the logical conclusion could be reached that the injuries or death resulted from negligent acts. " It is by no means indispensable to a recovery that an injured party should always produce eye witnesses as to the manner in which an accident occurred, for in many cases this is impossible and is almost always difficult, but it does not follow that a recovery cannot be had in such cases. The facts of defendant's negligence and claimant's freedom from contributory negligence may be inferred from the circumstances surrounding the accident. (*Galvin* v. *Mayor*, 112 N. Y. 223, 228.) " (*Peterson* v. *State*, 2 N. Y. Supp. [2d], 921, 924.)

The crux of this case is whether the conditions at the place of the accident were such as to create a dangerous condition for automobile traffic and whether the State was negligent in so constructing the highway at that point and continuing to maintain it in such a condition.

There are a number of items making up the dangerous condition at the crest of the highway at and near the place of the accident, any one or all of which contributed to the accident and were the cause of same. One may arrive at that conclusion from the testimony in the case, but does so with a greater degree of certainty after a personal inspection of the general surroundings. The court, at the request of counsel, made such inspection of the highway, and found that the combination of conditions existing at the crest of the highway and on both sides of it, were extremely dangerous when approaching from the west, and furthermore, *that this condition is dangerous even in broad daylight.*

The road west of the point of the accident was a two-strip concrete highway eighteen feet in width and was up-grade, rising thirteen and seven-tenths feet from a point about five hundred and fifty feet westerly to the crest of the hill or highway; it was a level road for a distance of about four hundred and seventy-one feet to a point approximately seventy-nine feet west of the crest of the highway, where the concrete construction ended and macadam asphaltic type of pavement began and continued the seventy-nine feet to the crest of the highway and easterly for a considerable distance beyond the place where the automobile skidded. From the point referred to as the crest of the hill, the macadam portion of the highway curved sharply to the south or right for an east-bound traveler, and for an approximate distance of two hundred feet the highway was down grade eight and five-tenths feet.

The approach to the crest of the hill from the west was of concrete and practically level, and at a point approximately forty feet west of the crest of the hill and on the macadam part of the highway, the road was banked at different or varying elevations; commencing at the beginning point, the northerly edge of the highway was three inches higher than the southerly edge, and at a point fifty feet further east, the northerly edge of the highway was one foot three inches higher than the southerly edge of same, and fifty feet further east from that point, the northerly edge of the highway was one foot six inches higher than the southerly edge, and at a point one hundred feet further east, the northerly edge of the highway was a little over one foot four inches higher than the southerly edge, and thereafter continuing, the banking was reduced. It thus appears that the higher edge of the highway at the locations just above stated, was on the left-hand side of the road to a person traveling in an easterly direction, and that the road was lower on the right-hand side on which the deceased was traveling as she approached the place of the accident.

The conditions above described cause an east-bound motorist, after leaving the straight level concrete approach and passing over the crest of the hill to almost immediately descend on the declining grade, and, at the same time, make a sharp curve to the south or right, along a macadam surface which was tilted or banked so that the lower or southerly edge of the highway was from one foot three inches to one foot six inches lower than the northerly or higher edge. These conditions were not visible to an east-bound motorist until at the crest or top of the hill.

In addition to the testimony with respect to the alignment and construction of the approach to the crest of the hill, and the road beyond said point, and the court's personal observation of such

conditions, a number of highway construction engineers have testified that the general construction of the portion of the road in question and the alignment of same were contrary to good engineering and construction practice. None of these opinions were contradicted by testimony of other engineers or highway experts.

Added to the physical conditions at the *locus in quo*, indicating negligent construction and maintenance, there existed on August 10, 1935, and for a considerable period prior thereto, a dangerous condition due to the faulty construction and negligent maintenance of the *macadam portion* of the highway. The State treated the macadam portion of said highway with stone and petroleum asphalt in the years of 1931 and 1932, but since the latter application of stone and asphalt, nothing was done to the macadam surface, and as a result of such failure to care for the macadam surface of the highway during 1933, 1934 and 1935, and up to the time of the accident in question, it became slippery and was dangerous in rainy or wet weather. Such a condition at the top of the hill, in conjunction with the physical conditions already mentioned, rendered the highway at that point very dangerous. It is well known to the Highway Department of the State, and in fact, almost common knowledge, that the action of the sun and the elements on an asphalt pavement brings about a slippery surface when wet. The failure of the State to care for such highway at the place · of the accident constitutes carelessness and the State is, therefore, guilty of negligence. While the State is bound to use only reasonable care in the maintenance of its highway, it was not reasonable care to allow that portion of the macadam-surfaced highway to go for almost three years without any attention. (*Killoran* v. *State*, 155 Misc. 26, 27.) There is considerable creditable testimony that the road at and near the place of this accident was very slippery when wet, and that it had been so for an unreasonable length of time. Ample testimony appears in this record showing what happened to motorists going over that section of the highway in an easterly direction during the years 1934 and 1935 and within the patrol period.

While ordinarily the State would not be liable for conditions due solely to weather, yet when the highway is rendered more dangerous by action of the elements, and the State fails to properly remedy such dangerous condition, it may become liable to one injured thereby, especially so if it had knowledge, actual or constructive, of such existing conditions. While it may not, in the instant case, be necessary to show that the State had notice of the improper and negligent original construction and maintenance of the highway (*Timerson* v. *State*, 145 Misc. 613, 618), it is my opinion that from

the evidence adduced the State had actual knowledge and certainly constructive knowledge of the dangerous conditions. Mr. Wadsworth testified that he had conversations with respect to various accidents which had occurred at the location in question with Mr. Ambrose Cain, the State's highway patrolman. While the witness, Mr. Wadsworth, did not recall the exact conversation, he did recall definitely that the accidents were discussed. Even though Patrolman Cain was in court, he did not rebut or deny this testimony. Furthermore, the fact that the slippery surface existed on this stretch of highway during all of 1934 and 1935 up to the happening of this accident, over a road that was being patrolled by the State, is sufficient to spell out constructive notice of its dangerous condition.

To all of the foregoing, there should be added the additional act or acts of negligence on the part of the State which contributed to this accident, and that is, in view of all the other conditions present, it failed to erect warning signs tending to give an eastbound traveler some fair and reasonable notice of the situation ahead. There was no warning sign or signal of any kind upon the highway, warning motorists approaching from the west on the concrete portion of the road, that the concrete pavement ends at any distance ahead, and that the road ahead was macadam and slippery when wet and that there was danger ahead because of a sharp curve and descent immediately over the crest of the hill. The only sign or warning was the "Slow" sign about 124 feet westerly of the end of the concrete pavement. For several years prior to 1935 there was in common use various forms of signs indicating or warning motorists of conditions similar to those on this highway. The plan and method of construction of the highway on this hill, taking into consideration the absence of the warning signs just referred to, were not in accord with good engineering practice.

In view of the existing conditions at or near the crest of the hill on the highway in question, the failure of the State to give adequate warning by the erection of proper and adequate signs at a reasonable distance from the point of danger, constitutes a serious breach of duty, and created an unnecessarily dangerous condition. "At the least, negligence is indicated in failing to maintain warning signs such as are commonly found at places where less danger is to be apprehended than that encountered here. Liability follows where an injury is the natural and proximate consequence of neglect of duty. (*Travelers Ins. Co.* v. *Peet & Powers*, 200 App. Div. 781.) " (*Sporborg* v. *State*, 226 id. 113, 116.)

While there were no eye witnesses to the accident, it appears from all of the circumstances, the facts preceding the accident,

deceased's manner of driving up the hill, the fact that there was no other car or vehicle at the scene of the accident, the direction in which the deceased's automobile was going and the direction that it faced immediately after the accident, the extent and location of the damage to the automobile and the location of same with respect to the highway, that the proximate cause of the accident was the skidding of deceased's automobile on the slippery surfaced macadam highway. This fact is established from all of the circumstantial evidence and seems to be a reasonable inference and a logical conclusion. It further appears that the skidding of deceased's automobile was caused by reason of the negligence and carelessness of the State and its officials in any or all of the particulars hereinbefore discussed.

The burden of establishing contributory negligence in this case is upon the State. (Dec. Est. Law, § 131; *Frate* v. *State*, 245 App. Div. 442, 446.) There is no evidence of any kind showing contributory negligence on the part of deceased, and, therefore, the only fair assumption is that at the time of the accident the deceased was using due care and caution in the operation of the automobile.

The deceased was twenty-five years of age; married to John Le-Boeuf, claimant herein, was a school teacher at Tupper Lake, and had a life expectancy of thirty-eight and eighty-one one-hundredths years. The funeral expenses amounted to $768. An award should be made in the sum of $10,000, together with $768, the actual amount expended for the funeral expenses, making a total in the sum of $10,768.

BARRETT, P. J., concurs.