EDITH ANDERSEN, Claimant, v. STATE OF NEW YORK, Defendant. (Claim No. 30538.)

ANDREW W. ANDERSEN, Claimant, v. STATE OF NEW YORK, Defendant. (Claim No. 30539.)

Court of Claims, July 23, 1952.

*Warner M. Bouck* and *Robert H. Ecker* for claimants.

*Nathaniel L. Goldstein, Attorney-General (James G. Austin* of counsel), for defendant.

LOUNSBERRY, P. J.  In the year 1949, the State reconstructed a section of State Highway Route No. 145 running generally southerly from Middleburgh to Franklinton.  In the vicinity of the accident which gives rise to this claim the new highway ran about parallel with and somewhat to the west of the original highway.  At the point here involved the old road, as one proceeded southerly, was terminated by a barrier and connected to the new highway by a blacktop spur, or connecting link, about 100 feet long.  The right-hand, or westerly, turn onto the spur from the old road began at a point about eighty feet north of the barrier and was sharp, being greater than a right angle according to some of the witnesses.

The barrier consisted of three railroad rails set in the ground across the old pavement and connected by steel cables.  At the center of this barrier was a sign forty inches by twenty inches in dimension containing a black arrow on a yellow background, pointing in the direction of the turn toward the new road.  There were no other signs or warnings of any nature to indicate either the presence of the barrier or the existence of the sharp turn.  The arrow sign, it will be noted, was about eighty feet south of, or beyond, the turn.

Just north of and on the opposite side of the road from said turn the State had constructed a driveway to afford access to the road from the premises of one Gardner Murnann, whose former driveway was now beyond the barrier.  The evidence indicates that clay and gravel both from this driveway and from the shoulders of the old road had washed onto the pavement at the intersection.  It also indicates that the old pavement, which was concrete covered with a blacktop mixture, had been

considerably cut up and damaged by highway construction machinery but that the State had performed no repairs or maintenance since the opening of the new road and had not cut the high weeds and grass on either side of the old road. In fact the State had abandoned most of the old road but had retained control of a 200-foot section extending northerly from the barrier and therefore including the entire intersection and the area in which the clay and gravel had washed. Although no longer a main highway, the road was still travelled by the eight or nine families who lived along it, by milk trucks, and by the patrons of the Red Barn, a restaurant and grill located on the old road about 1,200 feet north of the intersection.

On the evening of June 29, 1950, the claimant, Andrew W. Andersen, operating a 1950 Mercury sedan and accompanied by his wife, the claimant Edith Andersen, attended a meeting of a volunteer fire company, of which Mr. Andersen was president, at the Franklinton Grange Hall. They and some other couples left the meeting at about 11:30 P.M. and headed toward the Red Barn. In so doing they drove northerly along the new road, turned right onto the above-mentioned spur and then left onto the old road and thence northerly to the restaurant. This was the first time that Mr. Andersen had actually driven on the connecting spur since its construction. He had, however, driven the old road regularly before the reconstruction and afterward he had driven along the new road twice daily, each time passing its intersection with the west end of the spur. From the new road at that point the entire spur, the turn, and the termination of the old road were all clearly visible, as is shown by claimant's Exhibit 20, a photograph taken from the new road. He must, therefore, have been aware of the general situation even though he had not travelled the spur.

At the Red Barn the party had refreshments, including, according to Mr. Andersen, a bottle of beer apiece. They all left shortly after one o'clock on the morning of the 30th, and Mr. and Mrs. Andersen proceeded southerly along the old road. It had rained, the pavement was wet, and there were occasional patches of fog along the way. According to his testimony, Mr. Andersen was traveling between twenty-five and thirty miles per hour and was looking for the right turn onto the spur. He claimed to be unfamiliar with the barrier and saw neither it nor the arrow sign. He failed to detect the turn until he was so close to it that he was compelled to apply his brakes. When he did so the car skidded straight ahead and crashed into the barrier. Mrs. Andersen was very severely injured, Mr.

Andersen received some injuries, and the car was virtually wrecked.

The court is satisfied that the State was negligent in the maintenance of the 200-foot section of the old road now in question, both with respect to the placement of proper warning devices and with respect to the condition of the highway surface.

Section 95-b of the Vehicle and Traffic Law provides that the State Traffic Commission is under a duty to adopt uniform rules and regulations conforming so far as is practical with nationally accepted standards concerning the type of traffic signs, signals and markings to be used on all State highways, and provides further that "All signs, signals and markings hereafter erected on or along such highways shall conform to such uniform rules." The rules and regulations issued pursuant to the foregoing statute are contained in and comprise the "Manual of Uniform Traffic Control Devices" issued by the State Traffic Commission April 28, 1948, and effective September 1, 1948. The manual prescribes that turn and curve signs shall be located 300 feet in advance of the point of curvature, and that, where the recommended speed on the curve is less than forty miles per hour, as was true in the present case, the curve sign be supplemented with a sign stating the recommended speed. The manual also requires the use of intersection signs in advance of the intersections requiring caution or reduction in speed. "DEAD END STOP" signs are mandatory where a highway terminates at a dead end. Special pavement markings are required where an obstruction exists. All signs, with exceptions not here pertinent, must be reflectorized. The arrow sign used in this case is supplementary only to the other prescribed warnings.

Whether the road termination and turn in this case be regarded as a curve, an intersection, or a dead end, it is obvious that the State completely failed to meet its own sign requirements in this situation. The sole warning was the arrow sign which, as above noted, is supposed to be supplementary only. It afforded no warning whatsoever of the existence of a barrier and, located as it was, eighty feet beyond the turn, it gave no adequate or timely notice of the existence of the turn. The barrier itself was virtually invisible at night. There is dispute as to whether the sign was reflectorized, but even if reflectorized, it was apparently none too visible, judging from the testimony of William Schrader, a disinterested witness who had travelled the old road a number of times, and who, despite his familiarity with the situation, had sometimes had difficulty in locating the

turn. He insisted that the sign was not luminous. There was evidence of other accidents in which cars had crashed into the barrier.

This hazardous situation was further aggravated by the high growth of weeds and grass which tended to reduce visibility, and by the accumulation of clay and gravel on the road which was certainly conducive to skidding, at least in wet weather. In all, it is obvious that the State, although retaining control of this dangerous section of road, had almost completely shirked its responsibility for maintaining it in a reasonably safe condition for travelers. Liability has been found in many cases where the inadequacy of the warnings and the neglect was less flagrant. (*Bovey* v. *State of New York,* 197 Misc. 302; *Ziehm* v. *State of New York,* 270 App. Div. 876; *Haggerty* v. *State of New York,* 193 Misc. 924, affd. 275 App. Div. 981, affd. 300 N. Y. 537; *LeBoeuf* v. *State of New York,* 169 Misc. 372, affd. 256 App. Div. 798.)

The court is not impressed with the State's argument that the highway deserved little attention because of light travel. The State is still under a well-established duty to maintain its highways in a reasonably safe condition for travelers and, as a part of that duty, to give adequate warning of hazards to be encountered. We know of no statute or case which relieves the State of that duty simply because the highway is not a main artery of travel.

The court is also satisfied, however, that the driver, Andrew W. Andersen, was driving more rapidly and less attentively than the known situation demanded. Had he been proceeding as cautiously as he would have the court believe, it is almost incredible that he would have skidded nearly 100 feet after applying his brakes and would have struck the barrier with such force as to produce the heavy damage which actually resulted. According to the expert testimony which was presented, his stopping distance upon application of his brakes at the claimed speed of twenty-five to thirty miles per hour, even on a wet and slippery surface, should have been much less than 100 feet, particularly in view of the fact that the road proceeded slightly upgrade from the intersection to the barrier. It seems of some significance that another car which preceded the Andersen car negotiated the turn without apparent difficulty, and that the car which followed the Andersen car stopped at the intersection without mishap. Our conclusion is that Mr. Andersen was contributorily negligent.

Mrs. Andersen was very seriously injured. She remained in a semicoma for seventeen days after the accident and was in the hospital for forty-three days. She suffered several compound fractures of the jaw, which required operative treatment, and a number of deep lacerations of the face which have left several disfiguring permanent scars. The functioning of the jaw has been permanently impaired, so that she has and will continue to have difficulty in eating. She suffered great pain and at the time of trial still had pain in one part of the jaw and a feeling of numbness in another part, which is likely to persist. She was unable to do her own housework for some time and is not now able to work with her former efficiency.

We are satisfied that she was guilty of no contributory negligence and that the negligence of the State was a concurrent cause of her injuries and suffering. She may, therefore, recover damages therefor despite the concurring negligence of her husband which bars his separate claim for injuries and damages. (*Laitenberger* v. *State of New York,* 190 Misc. 633, affd. 273 App. Div. 942.)

Accordingly we award her such damages in the amount of $15,000.

Let judgment be entered accordingly.