Russell Gr. Hunt, J.
The claimant seeks the recovery of damages for personal injuries sustained on March 7, 1956, at about 4:00 a.m., when the automotive tractor and trailer he was driving in a heavy rainstorm easterly on State highway, Route No. 20, about three and one-half miles west of the City of Albany, struck the collapsed two southerly lanes of the highway. The collapse occurred some time between 1:45 a.m., the time when a State Trooper had passed over the highway on his patrol and found it intact, and, 4:00 a.m.
The claimant’s theory was that the highway collapsed due to the incorporation in the State’s highway system of a culvert which had been constructed by the dry masonry method and permitted water to escape into the ‘ ‘ blow sand ’ ’ fill under the pavement, resulting in the mixing of the sand and water *948 and the washing of the mixture back into the culvert through the same joints which permitted the water to escape in the first place.
There is no doubt that it is the State’s duty to properly construct and to maintain its highways in a reasonably safe condition (Boyce Motor Lines v. State of New York, 280 App. Div. 693, affd. 306 N. Y. 801); this is “ horn-book law ” (Johnson v. City of New York, 208 N. Y. 77, 81). The duty, however, “is not absolute, so as to impose liability * * * in every case where a traveler, without fault on his part, sustains injury from a defective street * * * liability depends in all cases upon negligence * * * The mere existence of a defect from which a traveler sustains injury, does not, independently of negligence, establish a culpable breach of duty” (Hunt v. Mayor, etc. of New York, 109 N. Y. 134, 140; see, also, Schmidt v. City of New York, 179 App. Div. 667, 669, affd. 228 N. Y. 572). Accordingly, and in support of his theory, the claimant established that the culvert (which was about 21 feet below the surface of the highway) had been constructed many years ago by the simple method of placing stone upon stone with a stone slab covering and without a binder or bonding agency (the dry masonry construction method); it was not water tight. Its size was one and one-half foot in width by three feet in height. It had existed under a two-lane heavily travelled main highway for many years. In 1941, the State reconstructed the highway by increasing its elevation about one foot, widened it to a four-lane highway and incorporated and extended the existing culvert. The State’s plans for the reconstruction work erroneously referred to the existing culvert as being three feet wide and accordingly provided for the extension to be of that width for an additional 42 feet to the north. The extension, as actually constructed did not conform to the width of the existing culvert but followed the plan for a three-foot width and the extension was limited to 38 feet. From the place where the two sections joined, each side wall of the extension was battered to the width of three feet. This produced a culvert which was ‘ ‘ slightly or moderately funneled ’ ’ from the intake on the north and was not conducive to the easy passage of water and debris. At the north end of the culvert the opening was flared and two side walls were built, about six and one-half feet apart, to collect water from the hills, springs and swamps adjacent thereto and new channels were constructed to lead the water to the intake. The roadway fill under the new and old sections of the highway came from the area and was a fine sand called ‘ ‘ blow sand ” and when saturated with water would flow freely and easily.
*949 There were no signs or indications, on the exterior of the highway and the embankment, of the process by which the fill was being eroded or washed away and the State’s evidence that its employees looked into the culvert from time to time and saw no suspicious signs of an erosion confirmed the outward appearances of the roadway and embankment. Still, the washing away process continued and caused the collapse. The collapse was over the old culvert. The old culvert was not water tight and water escaped therefrom and into the “ blow sand ” fill which washed back into the culvert and was discharged into the creek below. The State’s resident engineer in Albany County and the one responsible for the maintenance of the highway, called as a witness by the claimant, gave it as his opinion that the collapse of the highway was due to the escape of water from the culvert over a period of time, for there was no evidence, after the collapse, of a large accumulation of fill in the creek below, such as might follow a sudden washout; tbe water escaped, he said, “ out through the side, through the interstices in the stone [of the culvert] and picked up this fine sand and washed it back into the culvert and out ’ ’. The State neither contradicted this testimony nor the additional expert testimony on claimant’s behalf that the incorporation of the old stone culvert into the State’s highway system was not good and proper construction practice (see, too, Johnson v. State of New York, 5 A D 2d 919). The only testimony on the State’s case concerning the culvert was from the State’s light maintenance foreman and was to the effect that inspections from time to time at both openings of the culvert disclosed nothing to arouse suspicion that the highway might collapse.
The State did not, in the light of the facts herein, exercise good construction practice in incorporating the old culvert into, and, maintaining it as a part of, its highway system; this was negligence and such was the proximate cause of the accident (Timerson v. State of New York, 145 Misc. 613; Logan v. State of New York, 162 Misc. 793, affd. 254 App. Div. 410). It was unnecessary to show that the State had notice (Timerson v. State of New York; Taylor v. City of Albany, 239 App. Div. 217, affd. 264 N. Y. 539). The claimant was not negligent.
The injuries which the claimant received are set forth in the decision accompanying this memorandum and an award is therein made to him for the damage sustained.