Caroline K. Simon, J.
This action is brought against the State of New York by the father and administrator of the estate of the late Salvatore Mannino for $102,150 in damages, alleging that negligence in the construction and maintenance of barricades on Northern State Parkway was the cause of the death of decedent on August 31,1963.
Claimant was granted letters of administration of the estate of the deceased by Surrogate Clancy of Queens County on December 23, 1963. Notice of intention to file claim was timely filed in the office of the Clerk of the Court of Claims and the office of the Attorney-G-eneral on February 21,1964. The claim itself was timely filed in both offices on March 3,1964, and has neither been assigned nor submitted to any other court or tribunal for hearing or determination.
Salvatore Mannino was 21 years old, unmarried, and in good health at the time of the accident. He resided with his parents and a younger brother in his parents’ house in Middle Village, Queens. On June 11, 1962 he had received his high school diploma, had served for six months in the armed forces, and thereafter had been employed in various jobs. Immediately prior to the accident he had been hired as an apprentice electrician and worked for an electrical contractor on a construction job in midtown New York. He owned a motorcycle which he had purchased new three to four months previously, and was licensed to operate it.
Mr. and Mrs. Mannino had a Summer place in Holbrook, Suffolk County. Salvatore was going there when he was observed by a motorist to be riding his motorcycle eastbound on the Northern State Parkway at around 4:35 a.m. of Saturday, August 31. The witness testified that he saw the motorcycle leave a parkway gas station on his left, and proceed at a speed of from 40 to 45 miles per hour. No other vehicles were seen by the motorist, who stated that there were foggy patches on the parkway and that he himself was driving at a speed of from 10 to 15 miles an hour as he passed through the fogged portions of the road. He testified that he could see Horn one-to-five-car lengths ahead of him between clear areas.
The witness said that he was aware of the existence of barriers across the eastbound road approximately 400 feet east of the Sagtikos State Parkway overpass, and that as he approached the barricade he heard a loud crash. He slowed and noticed that a portion of the barrier had been broken and knocked aside, and *819 that a torn opening appeared. He drove slowly through the opening. His headlights revealed a body lying on the ground about 50 feet from the barricade, and a motorcycle lying beyond and to the east of the body. He stated that the fog was quite heavy at this portion of the road, that he had been familiar with the area for the past nine years, that the barriers had been there for some years, and that it was the densest fog he had ever seen there.
A police officer assigned to motor patrol duty on a tour which began the preceding midnight, testified that he had toured Northern State Parkway from the barriers to Sunnyside Boulevard about six times early that morning before the accident, that the parkway was straight and level at that point, with two lanes of traffic in either direction separated by a grass divider, and that lighting was provided by means of light poles set approximately 200 feet apart on each side of the roadway, and that the Sagtikos Parkway overpass was lighted in the same fashion. He described the barriers as of wood construction, X-shaped, made of 2 feet by 6 feet planks, and 5 feet high.
The officer testified that he was notified of the accident by another officer patrolling the Sagtikos Parkway, that he arrived on the scene at 4:36 a.m. and observed that one of the three barricades, the one in the passing and most northerly lane, was shattered, although a portion of it was still standing. He stated that each barrier had either one or two reflector arrows measuring two feet long and one foot wide at the head. He stated that the motorcycle lay 70 to 80 feet east of the barricades on a grass shoulder, and that the deceased’s body lay 50 to 60 feet east of the same barricade. He testified to the motorcycle having slight front end damage. He also described skid marks in the passing lane as measuring 100 feet.
Another witness was a foreman in charge of maintenance of that section of the parkway. He testified that the barricades had been placed there some 12 years before the accident, and that each section of the barrier had attached to it two red-orange reflector arrows pointing toward the right. He stated that these arrows were made of Masonite board with reflectorizing material on them, and that there were two other signs placed on the center divider «trip, one reading “ Slow Down ” and the other ‘1 Slow-Curve Ahead ’ ’. These two signs, he said, were placed 300 to 400 feet before the barrier, and were black-faced with silver reflectorized lettering.
A carpenter employed by the State for 36 years, whose duties included the repair and maintenance of parkway signs testified that both signs were installed on May 31, 1961, pursuant to a *820 Park Commission order dated May 18,1961, and that, the “ Slow Down ” sign measured 28 inches by 47 inches and used 9-inch Scotchlight lettering.' He stated that the word “ Slow ” on the other sign used 12-inch Scotchlight letters, that the phrase “Sharp Curve” used 6-inch Scotchlight letters, and that the latter sign measured 47% inches by 60 inches.
The court, in its determination of the question of liability, must be convinced that an unsafe and hazardous condition existed, of which the State had either actual or constructive notice, that the State failed to take appropriate corrective measures to render the highway safe for travel, and that this failure constituted negligence on its part.
“ It is now so well recognized that the mere happening of an accident does not establish negligence that citation of authority is unnecessary ”. (Lalomia v. Biggers, 25 A D 2d 742 [1966].)
“ In a death case a plaintiff is not held to as high a degree of proof of the cause of action as where an injured plaintiff can himself describe the occurrence ” (Noseworthy v. City of New York, 298 N. Y. 76, 80 [1948]).
The court further recognizes: “ The duty of the State to give warning of the hazards existing on highways maintained by it is no longer open to doubt (Canepa v. State of New York, 306 N. Y. 272) and such warning signs must be erected wherever necessary and be reasonably adequate for the intended purpose (Ziehm v. State of New York, 270 App. Div. 876; Le Boeuf v. State of New York, 169 Misc. 372, affd. 256 App. Div. 798, affd. 281 N. Y. 737). ” (McDevitt v. State of New York, 1 N Y 2d 540, 544 [1956].)
The duty of the State to exercise reasonable care does not, however, east it in the role of insurer of the safety of the users of the highways it maintains. (See Boyce Motor Lines v. State of New York, 280 App. Div. 693, 696 [1952].)
In the instant matter, claimant’s decedent met his untimely death unobserved. The court can only speculate as to the speed and manner in which the motorcyclist operated his vehicle at that hour of the morning. Whatever the circumstances surrounding the fatal impact, the preponderance of the evidence clearly demonstrates that the State’s duty to render the highway safe for travel had been performed by the erection of the reflectorized barricades, heralded by warning signs placed anteriorly.
The tragic death of this young man in the prime of his life makes the decision as to liability fall within the law cited above.
There was no proof submitted as to a potentially dangerous condition, or a breach of the principles of sound engineering in *821 the construction of the barricades and warning signs, or of prior accidents involving these barriers, or that they were the proximate cause of the youth’s untimely death.
The claim must be dismissed on its merits.
This memorandum, together with the findings of fact and conclusions of law submitted by the State and marked by the court, constitutes the written decision of the court in accordance with CPLE 4213 (subd. [b]). Let judgment be entered accordingly.