HAROLD CHRISTMAN, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 27991.)

Court of Claims, May 13, 1947.

384

*Louis E. Krohn* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Frank M. Noonan* of counsel), for defendant.

GREENBERG, J.   Claimant's properties, abutting upon State Highway 12B and known by numbers 10 and 15 Franklin Avenue, in the village of Clinton, were damaged on September 25, 1945, by flood waters which, because of the inadequacy of certain culverts and the storm-water sewer system thereat, had overflowed onto the highway and the property adjacent thereto.   The highway had been constructed by the State in 1910, reconstructed in 1928 and, since its original construction, was maintained, patrolled and supervised by it.   As a necessary adjunct, the State undertook in 1910 to establish a storm-water sewer system, consisting of the building of new culverts, retaining an old culvert

and some old drain pipes, and using and appropriating portions of the old drainage system. The system, as then established, had remained substantially the same except for the installation in 1934 of a series of catch basins.

Approximately 1,500 feet southerly from claimant's premises and running underneath the State highway is culvert "B". Prior to 1910, a single culvert, 3 feet high and 4 feet 4 inches wide and entirely constructed of cobblestones, was located at that point. The State converted this single culvert in 1910 into a double culvert, by the addition of a section adjacent to the old culvert, and the extension of the old one so that both sections were 33 feet in length. The new section, built of concrete, was an additional 5 feet 8 inches wide and of the same previous depth. When unobstructed, this double culvert had an opening of 30 square feet and had practically no slope, having a fall of .31 for its length of 33 feet. It had been constructed in connection with culverts "A" and "C" and the storm-water sewer system, for the purpose of keeping the highway and the immediate area free from flood waters and to drain the water shed area located southeast of culvert "B".

Culvert "C", built in 1910, is located at the apex of the "depressed" or "skating rink" area (at the junction of Franklin Avenue and Meadow Street), a distance of 215 feet south of claimant's garage. It is 82 feet in length with openings 2.5 feet high and 3 feet wide and empties into the sewer system under Franklin Avenue. Culvert "A" was located northerly from claimant's property running underneath the highway where it connected with one of the catch basins constructed by the State. It was 30 feet long with openings 1.9 feet high and 2 feet wide. The effect of this culvert was to divert and carry the water on the easterly side of Franklin Avenue under the highway and into the conduits of the system on the westerly side of the avenue near claimant's property.

The watershed area, comprising 768 acres or 1.2 square miles, was southeast of the highway. The area was hilly, with a steep fall of 200 feet for each mile and an elevation at culvert "B" of 600 feet and in the hill of 1,000 feet, causing a rapid "run-off". Approaching the highway were two streams, converging into one before reaching culvert "B" and described as a "flashy stream".

By reason of the inadequacy of culvert "B" and the storm-water sewer system, on September 25, 1945, and during numerous times in years prior thereto, the waters from the watershed area, reaching the mouth of the said culvert in such large quan-

tities that they were unable to pass through, then backed up, became impounded at the mouth and overflowed onto and across the meadow and onto and down the State highway. The flood waters then proceeded into the ditches along Meadow Street and thence flowed northerly toward the so-called " depressed area ", where the only outlet, other than again flooding the highway, was culvert " C ". This culvert proved likewise inadequate in size and insufficient for the purpose for which it was erected, being unable to accommodate the water accumulating at its mouth. There another impounding occurred, creating a tremendous pressure on the old storm sewer system, which had the effect of forcing the water up and out of the storm sewer system by shooting it up through the catch basins and down the State highway and eventually onto claimant's property. In the meanwhile, the waters coming through culvert " A " were adding to the already overburdened sewer system.

That the storm-water sewer system in use in 1910 when the highway was first constructed proved inadequate became apparent in subsequent years. The old storm-water sewer system in use prior to 1910 consisted simply of open ditches or old stone box conduits which ran under and along the old highway. The State knew or should have known the capacity, age and condition of this old system but notwithstanding it used and appropriated the old system without change, alteration or improvement as part of the drainage system for the new State highway. Bearing in mind the extent, character and topography of the watershed area and the nature of the stream, together with the fact that erosion increased the rapidity of the " run-off ", the State had a duty of constructing a culvert which would be adequate and proper to carry off the water reasonably to be expected to come from the watershed area. The erection of the double culvert " B " in 1910 and its maintenance without change in years subsequent thereto were, under the conditions prevailing in the area, improper and inadequate, and reasonable diligence and foresight required that it should have been several times larger.

In 1928, the State undertook to reconstruct the highway but did nothing to alleviate the situation pertaining to the inadequate storm-water sewer sytem. Between 1910 and 1928 the culverts and system failed repeatedly of proper operation and proved the inadequacy of the system to carry the waters from the watershed area or to keep the highway free from flood waters. In addition, the " run-off " of water from the watershed area was rapidly being accelerated between 1910 and 1928 by erosion, so that humus and top soil were being depleted to such an extent

that the rapidity of the " run-off " was increased 40% to 50% by 1928. Thus an even greater demand and burden was placed upon the culverts and system, thereby decreasing their capacity to function properly. Conditions became worse subsequent to 1928 but the State did nothing to avert the floods in the years prior to and in 1945. The rapidity of the " run-off " further increased from 1928 to 1945 an additional 40%, with the result that the mass of water reaching culvert " B " practically doubled under ordinary heavy rainfalls.

On September 25, 1945, the rainfall in this area was heavy, but not unusual or unexpected. The records of the Bureau of Water of the City of Utica showed a rainfall for the day of 2.06 inches. It had begun raining at 7:42 P.M. and continued intermittingly until 10:31 P.M., during which period 1.98 inches of rain fell. Storms of equal and greater intensity had taken place in this area in prior years (1932–1945 inclusive). The rainfall was not such as can be termed " an act of God " or unprecedented. It was a rainfall which should have been reasonably anticipated and for which proper precautions should have been taken in the exercise of due care and diligence. (*Mendelson* v. *State of New York,* 218 App. Div. 210, affd. 245 N. Y. 634; *Logan* v. *State of New York,* 162 Misc. 793, affd. 254 App. Div. 410.) The failure of the State to construct and provide adequate culverts and a drainage system constituted negligence for which it should be held to respond in damages. (*Logan* v. *State of New York, supra; Bowman* v. *Town of Chenango,* 227 N. Y. 459; *Loman* v. *State of New York,* 59 N. Y. S. 2d 492.)

Moreover, the proof overwhelmingly establishes the State's failure to properly inspect and maintain the sewer system. Culvert " B " was permitted to become obstructed and clogged with deposits of sand, gravel and debris to as much as two of its three feet in depth. The old cobblestone section to the south, towards Deansboro, was plugged with sand and gravel, leaving an opening in this section to function of only one foot. A large mound of solid earth, formed by previous accumulations of sand, silt and soil, existed thereat upon which grass had seeded and weeds were growing. The other section to the north, towards Clinton, was blocked about one and one-half to two feet. The entrance to the culvert was further obstructed by a large log and other debris caught by and accumulated on a wire fence, which likewise contributed to the impounding of the water at the mouth of the culvert. The State knew or should have known from the very character and nature of the terrain, the soil and the stream, of the tendency of the culverts to become plugged and

blocked, thus further reducing the capacity of these culverts to handle the water flow from the watershed and rendering them more inadequate at times of heavy rainfalls. The State therefore should have taken steps to properly and timely inspect and keep the culverts free of obstructions. This court finds that the State was derelict in its duty so to do.

An award is made herein in favor of the claimant against the State in the sum of $2,028.75. The proof as to the item of damage for loss of business is insufficient and said item is therefore disallowed.

Let judgment be entered accordingly.