IDA JACOBS, as Limited Administratrix of the Estate of LOUIS JACOBS, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28829.)

Court of Claims, May 31, 1949.

*Morris Simon, George H. Wein* and *James H. Glavin, Jr.,* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Harold S. Coyne* of counsel), for defendant.

RYAN, J. Claimant's intestate died from shock after having been immersed in the waters of the Hudson River at Northumberland on December 2, 1946. An occupant of a nearby house, Grace Roddick, observed decedent standing in the water. She summoned her son-in-law, Richard Obie, who went to the rescue. As Obie approached decedent and put out one hand to help him, decedent put out one hand, came forward to the river bank, fell and laid limp in Obie's arms and died. Investigation disclosed decedent's light automobile truck submerged in the river. The accident happened between 11:00 and 11:30 o'clock in the morning.

A short time before decedent was observed standing in the water, a traveler upon the highway, Howard Hayes, approached Route 4 from the west from Route 29, an intersecting road, at a point south of the point of the accident. Hayes observed a truck to his right and slightly farther south. Hayes turned to the north on Route 4 ahead of the truck and from time to time by means of his rear view mirror observed that the truck continued behind him at a distance of 500 to 1,000 feet. Hayes testified that his own speed did not exceed 20 miles per hour and that the truck at no time overtook him. On the morning of the accident there had been a light wet snow or a rain which had frozen. Highway conditions were icy. The road was sanded at the intersection of Route 29 and Route 4. No one testified to witnessing the automobile leave the highway. Witnesses did testify to marks indicating its course on the shoulder as it went into the river.

Decedent was 65 years of age. An autopsy showed that death was due to a complete blocking of the two main branches of the left coronary artery. It also showed an old healed heart injury. The defense elicited from the medical expert called by the claimant an opinion that the strain of the work which decedent had

done in the morning, driving his truck and moving furniture, or the shock of hitting a guardrail, or the mere fact that the truck went out of control on the icy highway, would have been sufficient to have caused the coronary occlusion. From all of the testimony, however, we deem it a fair inference that the shock of immersion in the water was the responsible factor.

As to possible contributory negligence of the decedent, the defense did not plead it nor meet its burden of proving it. Although Hayes was not acquainted with decedent nor familiar with his conveyance and although he did not see the accident, we believe there can be no doubt that the truck that he saw when at the intersection, and thereafter observed from time to time in his mirror, was decedent's truck. There is nothing in the record to suggest that decedent was driving recklessly or carelessly.

At this location Route 4 paralleled the Hudson for more than a mile. Approaching the scene of the accident there was a sight distance of 1,150 feet and the road was level. The complaint against the State is not that the road was slippery or was not sanded. The charge is that there was negligence in failing to provide a guardrail at the point where decedent's truck went into the river. Actually there was a guardrail, consisting of concrete posts with two wire cables attached, which extended for more than 500 feet between the highway and the river. In this stretch there was an 8% curve in 108 feet. The north terminus of the guardrail was 149 feet north of the apex of the curve and 41 feet north of the end of the curve. The highway was straight for 90 feet north from the end of the curve.

An engineer called by the claimant as an expert witness described the highway in detail, its width, its crown, the materials of which it was made, the degree of curve, the location and extent of the guardrail, the adjoining terrain, the proximity of the Hudson and the linear measurements between road and river. He gave his opinion that " the termination of the guard rail * * * at that particular point " is not " the proper and approved engineering practice " and that " primarily the guard rail should have been extended at least 100 to 150 feet further north." The Attorney-General called no witnesses, lay or expert. It is urged that this omission leaves the engineer's opinion " uncontradicted " and, inferentially, binding upon the court. We believe that this is not so. As in all cases where the State is charged with negligence in the maintenance of its highways the test is that of reasonable care. An expert's opinion is an aid to the court in applying this test. But the court must

weigh all the evidence before it in determining the issue. Against the opinion of one engineer stands the judgment and experience of the State's engineers expressed in the design and plan of the highway and its protective devices as they existed and were maintained on the day of this accident.

Two important cases, among others, are invoked as authority for a verdict against the defendant. These are *LeBoeuf* v. *State of New York* (169 Misc. 372, affd. 256 App. Div. 798, affd. 281 N. Y. 737) and *Sanders* v. *State of New York* (191 Misc. 248, affd. 274 App. Div. 842, affd. 298 N. Y. 850). The *LeBoeuf* decision (*supra*) followed the doctrine that the facts of a defendant's negligence may be inferred from the circumstances surrounding the accident and that liability followed if it could be said that the injury was the natural and proximate consequence of a neglect of duty. But in the *LeBoeuf* case (*supra*) there had been previous accidents which had been called to the attention of the highway authorities and there was a notable lack of signs warning of the dangerous condition. Here there is no proof of previous accidents and no suggestion that in this open, almost straight, stretch of highway warning signs were needed or that they would have prevented the accident. In the *Sanders* case (*supra*) the State had provided and maintained guardrails which were in themselves defective and insufficient. Here the guardrails were sound. They were in place to a point where the road was straight, the slope to the water's edge was gradual and the distance between road and river had increased.

After extended deliberation it is our judgment that to hold the State liable in this case would unduly extend the doctrine of negligence based on reasonable inference and would substitute for the test of reasonable care a rule that the State must insure the safety of travelers upon its highways. We therefore decide that the claimant has failed to establish facts sufficient to constitute a cause of action against the State of New York and that the motion to that effect made by the Attorney-General at the conclusion of the claimant's case must be granted and the complaint dismissed.

No requests to find have been submitted by counsel for the claimant.

The Attorney-General has submitted requests but as his motion to dismiss is granted it is unnecessary to mark them. (*Murray* v. *State of New York,* Court of Claims, Claim No. 19555, affd. 233 App. Div. 795.) An order dismissing the claim may be entered.