Alexander Del Giorno, J.
The claimant, born January 22, 1945 and now in her twelfth year, brings this action by William E. England, Jr., as guardian ad litem, to recover damages for personal injuries sustained by her and caused by the negligence of the State in constructing and maintaining a skating rink at Jones Beach, New York. The claim arises out of an accident which occurred on August 8, 1954, at about 8:45 p.m., while she was skating on roller skates in the outdoor skating rink, at Jones Beach State Park, one of the facilities maintained by the State at said park.
The infant and her mother had paid admission and were skating separately on the outer skating space of the rink. There is an inner space used for dance skating. Both spaces are made of smooth cement. Between the two skating spaces at the longer ends of the skating area there is a row of bricks about 5 feet wide over which there was installed a long bench with seats to accommodate 40 people, provided for the comfort of the skaters only. These bricks, according to the photographs in evidence, are placed in a pattern each transverse to the other but in a regular consecutive pattern. The bricks appear to have been laid down with great care, even with and on the same level with the cement flooring.
The testimony indicated that the rink was lighted with flood lights installed on two poles, one at each end of the rink. The infant, who had skated on the rink on three prior occasions, testified that there was a large crowd skating which included many children. She skated around for awhile and when she felt tired she approached the benches. Just before she reached the bricks she stopped skating. With her skates on, she then walked on the bricks which she stated felt hollow under her skates. She admitted on cross-examination that she knew the difference between the cement and bricks and that it is difficult to skate on an uneven surface. She testified further that she looked where she was going and saw no holes. The mother, who did not see the accident, stated the lighting was not very good, that it formed shadows. She merely added that she heard Carole call to her, went to her and found the infant on the bricks in a sitting position with her back toward the outer rink, crying. She was down in front of but short of the bench. The mother said she noticed the bricks were rough and uneven. She returned to the scene on August 25, 1954, and found the condition of the bricks to be the same. She observed the open space between the britiks to be about % to % of an inch. ^
^ The mother added that the cement or binding element did not reach the top of the bricks, The photographic exhibits con *1050 firmed that statement. The impression of the court based on the photographs in evidence is that there was about a quarter of an inch difference between the top of the binder and the top of the bricks.
State’s witness Mr. Raymond W. Ducker, who is the foreman of the games area at the park, has been employed there in a supervisory capacity for 9 years. He was on duty on the date of the accident but did not see it. He identified a photograph and a diagram of the rink and said the dimensions thereof are about 200 feet by 140 feet, and the smooth space where the infant and her mother skated was about 30 feet wide; the brick space in front of the bench is about 5 feet and the inner area of the rink is approximately 120 feet north to south and 60 feet east to west.
He had inspected the rink at 4:00 p.m. of that day and found everything normal. It was swept clean, including the bricks. He had five men assigned at the rink. The rink has remained the same to this day. Mr. Ducker further stated that the gap between the top of the binding element and the top of the bricks is kept filled with sand.
. He asserted that from January 1, 1954 to August 8, 1954, 75,125 persons had used the rink, and that for five years prior to the date of the accident 361,535 people had used the rink, according to the records there kept. He states that during his nine-year tenure at the park, no one tripped over the bricks and no claimed injury is on the records. The bricks, he said, were installed 16 years ago when the rink was built and he does not know of any repairs on the bricks having been made.
He further testified that all skates used were the property of the rink, the wheels on which are all made of composition fiber. At the time of the accident the wheel surfaces were of three different widths: % of an inch, 1 inch and lVie, inches, the larger wheel being on the smaller skates. He stated that none of the three wheel sizes could be caught between the bricks. The only way this could happen would be for the skater to turn the wheels at almost an 80-degree angle.
After the alleged fall the child was given immediate attention by the attendants and by the nurse who was called by the attendants. A splint was placed on her injured right forearm, and she was sent to Meadowbrook Hospital at Wantagh. Dr. Miner took care of her at the hospital. He removed the splint and placed her arm in a cast extending to the shoulder. The child remained at Meadowbrook for 2% days. Dr. Miner removed the cast in another hospital 8 weeks later. Dr. Miner was not a witness.
*1051 Dr. Benjamin L. Sclirage, who examined the infant on February 7, 1957, testified on her behalf to the effect that she had suffered a transverse fracture of the wrist, known as a Green-stick fracture, that the injury is permanent and that there will be some restriction to the flexation of the wrist. Dr. Leopold H. Wienick, who examined the infant on October 2, 1956, testified on behalf of the State that he found a slight enlargement of the right wrist, approximately one quarter of an inch in diameter, that the fracture was well healed and that the infant suffered no disability. The infant testified that she feels pain when she “ knocks ” her arm.
Upon the trial, the guardian ad litem, without opposition of the Attorney-General, moved to amend the claim so as to increase the amount of damages sought for personal injuries from $1,000 to $6,000, which motion was granted. He testified that the hospital and doctor’s bills were paid by him. He stated further that the claim had not been assigned in whole or in part.
In the light of the circumstances indicated the court made close scrutiny of the photographs introduced by both sides. The bricks underneath the bench appear to be in good condition. No one or thing passes over them. The bricks leading from the cement rink for about two feet toward the bench seem to be worn here and there. The surface is not shiny nor are corners sharp. This is due, without doubt, to the great amount of traffic of roller skaters who have passed over them through the years. There appears to be nothing abnormal in such condition or spacing. There is only the wear and tear attendant upon use. The court observed nothing which indicates carelessness in maintenance or repair and nothing to indicate that anyone walking on those bricks either on or off skates was being drawn into any trap.
Although the court feels a natural sympathy for this girl who suffered injury while in the pursuit of innocent pleasure, nevertheless the evidence does not warrant financial recovery. She was a proficient skater who was familiar with the skating rink; she was one of hundreds of thousands who have used the rink without suffering any injury, the condition of the bricks having been the same with respect to all of them. The cause of her fall is unknown, for neither the infant nor her mother saw any obstacles or foreign matter. The whole claim is predicated necessarily upon the condition of the bricks.
The State, as the proprietor of a public amusement area, owes to its patrons the duty of maintaining and operating its facilities with reasonable care. (O’Toole v. Thousand Is. Park *1052 Assn., 206 App. Div. 31; Shields v. Van Kelton Amusement Corp., 228 N. Y. 396.) It is not an insurer of the safety of its patrons, but owes them only the duty of reasonable care. Its duty is fulfilled when it makes the place as little dangerous as such a place can reasonably be made. (Ingersoll v. Onondaga Hockey Club, 245 App. Div. 137.) There was no such unusual danger or foreseeable hazard at the point involved to suggest that the State furnish other means of safety or protection for the skaters. The proximate cause of the accident is speculative, and lack of reasonable care on the part of the State was not established. (Jacobs v. State of New York, 195 Misc. 128, affd. 276 App. Div. 452.) The record is devoid of any testimony showing causal relationship between the accident and the condition of the bricks. The cause of the accident being unknown, the court cannot say that it could have been prevented by more supervision on the part of the State.
To merit a recovery, the claimant must show that the accident was brought about by the negligence of the State. ‘ ‘ Where there are several possible causes of injury, for one or more of which defendant is not responsible, plaintiff cannot recover without proving the injury was sustained wholly or in part by a cause for which the defendant was responsible.” (Digelormo v. Weil, 260 N. Y. 192, 200, citing Ruback v. McCleary, Wallin & Crouse, 220 N. Y. 188; Messing v. State of New York, 197 Misc. 907.)
In the application of these principles of law to the instant case, we determine that the State maintained its roller skating-rink and the appurtenances with reasonable care and safe for the use intended, and that it made the place as little dangerous as it could reasonably be made.
The court cannot escape the conclusion that the infant merely lost her balance and fell as she was walking on the bricks toward the bench. The change of pace in her movements may have caused her fall, but the court feels that the fall did not occur because of the condition of the bricks or because her wheel might have been caught between the openings in the bricks.
This fall resulted only from a risk all skaters assume as reasonably incidental to roller skating, and certainly not from an unsafe condition of the rink or its appurtenances. The court finds that in its primary obligation the State was in no way negligent. In view of this finding, we deem it unnecessary to decide whether the claimant was contributorily negligent. The claim is dismissed.
*1053 This memorandum constitutes the decision of the court in accordance with the provision of section 440 of the Civil Practice Act.
Let judgment be entered accordingly.