Alexander Del Gtxorno, J.
On December 22, 1951, at about 7:15 p.m., the claimants, Davina Towey and Mary Louise Towey, were riding in a motor vehicle owned by claimant James J. Towey and driven by Mary Louise Towey. They were proceeding easterly on Route 172 from Mount Kisco toward Bedford Village, Westchester County.
Route 172 is a two-lane concrete roadway, with shoulders on each side about 3 feet wide. At the far end of each shoulder there was a drainage ditch of various depths. The road is generally hilly. At a point about 275 feet before reaching the so-called Bessler house was the apex or crown of the road. Claimants state that as they approached the apex of the road, they could not see the other side thereof because the road ahead descended therefrom at an angle of some 2.8 degrees.
The claimants testified that just as they passed this knoll on the road, their car skidded on the icy surface which had been formed on their side of the road. The car skidded first to the right and hit a pole, then it rebounded and skidded across the road to the other side. The claimant Mary Louise Towey testified that she saw the icy surface too late to be able to avoid it.
The evidence offered through the State’s witnesses and records indicated that for 5 days previous the weather had been *97 very fickle, varying from a minimum of 3 degrees on December 17 to a maximum of 55 degrees on December 21. On December 22, the date of the accident, the weather varied from 28 degrees to 48 degrees. Relatively heavy rains occurred on December 19 and 21.
It was testified that at the time of the accident there was frost in the ground. The weather was cold, dry and clear. There was no ice on the pavement of the road other than at the location of the accident, which ice extended down the incline of the road at various widths for some 300 feet. This icy formation was caused by water bubbling out of the ground through an opening as thick as a man’s thumb at a point where the pavement on which the claimants were traveling and the shoulder met. The State’s witnesses assumed that this water which ran onto the pavement had been spread out for some 300 feet by being splashed about by the movement of passing vehicles.
The State’s witness Vuotto testified that in the course of time, sand which had been laid on the road at various periods, together with other accumulations had been added upon the shoulder, which was now at least two inches higher than the pavement.
The same witnesses testified that the local crew of the Department of Public Works, operating on a Winter schedule, sanded the road in its particular district whenever required, and removed from the road any impediments, including water. It is worthy of note that the roads of that particular district, including Route 172, had been sanded each day from December 17 to December 22. Nine men worked from 9 hours to 16% hours during these days at sanding the roads.
Mr. Julius J. Shane, the State’s engineer in charge of Northern Westchester, when called upon to explain the daily record cards kept by the crew, which were in evidence, and which covered the dates of December 17 through December 22, stated that they showed that during these days sanding operations were performed, but he could not specify at what locations. He said that on December 21 water was removed from highways, but he could not say from what highways. He stated that such removal of water might have been from Route 172. He also stated that it was possible that his office had received a communication regarding the icy condition at the scene of the accident but he was not aware of any. He explained that the temperature of December 21, which was a maximum of 55 degrees, caused a thaw in the ground, allowing the water frozen therein *98 to run, and stated that the cold weather of December 22 would cause a thin layer of water to freeze on the pavement.
Soon after the accident, the State employees, upon being-notified, came upon the scene of the accident and sanded the icy area. They also cut a lateral trench in the shoulder where the water was bubbling out. This immediately took the water into the drainage ditch with the result that no more water flowed onto the roadway.
It seems significant to the court that Mr. Austin H. Emery, the soil engineer of the State of New York, testified that an examination by him of the scene of the accident the day before he appeared in court, also a cold day, showed that the shoulder of the road was now lower than the pavement.
As a result of the accident, the car was damaged beyond repair, but that property damage claim was withdrawn because claimant James J. Towey had died in the meantime, and his records were lost. The other two claimants, however, were injured and now press their claims. Claimant Mary Louise Towey suffered contusions of her right arm. She went to the hospital, was there two hours, but received no treatment. She saw her doctor twice, and he gave her some sedatives and applied a sling to her right arm, which was removed two weeks later. She lost no time from her profession as a teacher, since she was then on vacation.
Claimant Lavina Towey was hospitalized from the date of the accident to January 14, 1952, and then remained at home until February 4, 1952, when she returned to work as a nurse at Westfield State Farm. She earned $300 per month; she lost no salary but sacrificed her vacation and sick leave. She paid $64 for the hospital bill, the balance being paid by Blue Cross. Her private doctor’s bill was not admitted in evidence since the doctor did not appear. Her injuries were: Avulsion fracture, greater trochanter of region of hip, and large hematoma in the right hip region. She still complains of occasional pain at night and upon change of weather. These injuries were confirmed by the State’s doctor, who testified that she has made a full and complete recovery without any partial permanent disability. The court accepts this testimony of the doctor and also his observation that the claim of post-traumatic arthritis cannot be allowed since the fracture was extra-capsular and did not involve the articular surfaces of the hip joint.
As is contended by the State, it is axiomatic that the State is not the insurer of the highways (Jacobs v. State of New York, 195 Misc. 128), and is required only to exercise reasonable *99 care in the maintenance of such highways. (Deulin v. State of New York, 277 N. Y. 558.) It may not be held liable for an act of God, for any irresistible disaster which is the result of natural causes and which could not have been reasonably anticipated, guarded against or resisted. The State may not escape liability, however, where a condition has been created by it, so as 1o make the very unpredictable acts of nature the agency of harm or damage to those using the highways. The exercise of reasonable prudence would have indicated to the State’s employees in charge of the highway, that causing the shoulder to be made higher than the surface of the pavement would naturally result in waters, whether surface or subsurface, to flow upon the surface of the pavement, instead of into the drainage ditch. (Logan v. State of New York, 162 Misc. 793, affd. 254 App. Div. 410.) To a like effect, and equally applicable, is the case of Woodruff v. Oleite Corp. (199 App. Div. 772).
From the testimony, it appears that generally there was adequate supervision of Route 172 by the employees of the State. However, no one, before the accident, inspected Route 172 at the scene of the accident on December 22, which was a cold day after a heavy rain, when such conditions as here might have been foreseen. How long had that water been bubbling before the accident? In what manner had it been spread for 300 feet or more 1 These were questions which naturally arose in the court’s mind, to which the court applied the rule of reasonable inference, resulting in holding the State negligent regarding this particular accident. In addition, the same employees testified that in the course of time, as a result of sanding operations along that road, the shoulder at the scene of the accident had been raised at least two inches above the surface of the pavement. The court finds that it was this condition of the shoulder which prevented the natural seepage of water from under the pavement to flow into the drainage ditch. The shoulder was the obstacle which prevented the proper disposal into the drainage ditch of surface waters or waters which were known to percolate under the surface, thus causing their diversion onto the pavement.
The court finds that while nature intervened, the proximate cause of the accident was the maintenance by the State of the shoulder of the road at least two inches higher than the pavement without outlet for surface or underpavement waters into the drainage ditch. This condition prevented the normal gravitation of the water into the lateral drainage ditch built for that purpose. The testimony of the geologist is significant. He *100 stated that now the State has lowered the surface of the shoulder below the surface of the pavement. Had this ounce of prevention by the State been taken before the accident, there would more than likely have been no accident. The court must of necessity give some weight to the testimony of the State’s witnesses. From their own testimony, the court must conclude that there was constructive, if not actual notice to the State of the condition complained of in time for it to have taken preventive measures.
The court finds that the State was negligent in the maintenance of Route 172 and that the claimants were free of any contributory negligence and are entitled to damages.
All motions made by the State to dismiss these claims upon which decision was reserved, are denied.
Claimant Mary Louise Towey is entitled to judgment in the sum of $500. Claimant Lavina Towey is entitled to judgment in the sum of $3,500. As indicated herein, the claim of James J. Towey, Claim No. 31518, has been withdrawn.
This constitutes the decision of the court in accordance with the provisions of section 440 of the Civil Practice Act. Let judgments be entered accordingly.