Richard S. Heller, J.
Each of these claims seeks recovery for damages to real and personal property. Each of the claimants owned property located on Castle Creek Road which is also known as State Route No. 11, lying south of a bridge carrying Route No. 11 over Castle Creek. Each of the claimants respectively alleges that their real and personal property “ was damaged by water and debris as a result of said Creek [Castle Creek] breaching a concrete dike or abutment on the south *2 bank of said Creek east of Route No. 11, on October 30, 1955, which break or breach was caused by the negligence of the State of New York, its agents, servants and employees in diverting said creek from its natural course and in failing and neglecting to properly construct and maintain said dike or abutment ”. The cases were tried together.
These claims have their genesis in activities by the State undertaken sometime in 1927. In 1924 the State had taken over the maintenance of the then existing bridge over Castle Creek. Subsequent thereto improvements in the highway were made and the bridge was relocated. As a part of that work commencing in 1927, the State carried out a realignment of the channel of Castle Creek.
Prior to that realignment, Castle Creek flowed in a southerly direction paralleling Route No. 11 to a point northeast of the property involved in these claims, where it made a bend and flowed westward passing under Route No. 11 where it again made a bend so that it flowed to the south paralleling Route No. 11 on the west thereof. In the course of the realignment no change was made in the north bank of the stream as it turned to the west. From the bend to the west to the bridge, a new south bank was constructed in the form of an embankment. The effect of this bank was to eliminate some 75 or 80 feet of a loop which the stream had previously made to the south before flowing west under Route No. 11.
Where Castle Creek made its bend to the west, the embankment wall had interlocking sheet piling at the base thereof with fill behind the piling with a concrete cap at the top of the sheet piling and above that concrete guardrails approximately six inches square and five or six feet long laid up in mortar. West of this section of wall, the wall consisted of concrete guardrails laid up with mortar and at the base of the wall large rock had been dumped. It was this section of the wall which washed out for a distance of some 15 feet in length so that some sandbags or caps on top of the wall and some of the guardrails were found to the south of the wall and the fill behind the wall was described as having been gouged out for a distance of some 25 feet south of the wall to ground level at that point. East of the damaged section, the wall was made up of sandbags filled with a concrete mixture. This sandbag section of the wall was not damaged in the flood and after the flood it continued to exist as a pervious embankment with many crevices.
The wall as it existed prior to the time of the damage complained of here was built to about the same or a slightly greater height than the original south bank of the creek.
*3 The wall was built from time to time over a number of years by the heavy maintenance crew of the Department of Public Works. The area behind the embankment wall was fill material of a gravelly type similar to the material which had constituted the original creek bank and was generally present in the area.
Some two or three years prior to the flooding involved here, some of the claimants had observed two cracks extending vertically but irregularly in the wall in the area where the wall washed out. These cracks were described as being from a half inch to an inch and a half in width. There is no evidence as to whether these were superficial cracks or extended to some depth in the wall. Subsequent to the flooding, crevices were found in the undamaged sandbag portion of the wall which extended to a depth of 18 inches and 36 inches.
For some three years prior to this damage, the county resident engineer for the Department of Public Works had noted on his reports an indication that repair of the riprap wall was required. He testified that this related to the placing of sandbags to bring the embankment wall to a uniform height.
The available records of weather observation indicate that there was unusually heavy rainfall in Broome County in October, 1955, at least at the Broome County Airport where the records were made. The testimony of all persons present in the area of the damage on October 30, 1955, indicates that there was a continuous heavy rainfall for a number of hours in a relatively limited area of Broome County. On the evening of October 30, 1955, some 18 miles of Route No. 11 were closed due to flooding of the highway and this flooding occurred not only in the vicinity of claimants’ property but at approximately three other points on Route No. 11. At least one other area of the flooding of Route No. 11 involved Castle Creek north and upstream from the property involved in this claim.
Water flowed from the embankment wall in a generally southwesterly direction across lands owned by the claimants and others and Route No. 11, covering something around 1,000 feet of Route No. 11, and finally came back into Castle Creek west of Route No. 11. Both experts agreed that the claimants’ property was in an area which they described as the flood plain of the creek which could be expected to flood any time the creek overflowed its normal banks. The depth and the force of the water flowing over claimants’ land gradually increased during the late afternoon and evening of October 30, 1955.
The obligation of the State did not extend to the prevention of floods in this area under any and all conditions. It had a duty in regard to its activities concerning Castle Creek not *4 to act so as to cause the discharge of waters onto the property of the claimants to their damage. (Allen v. State of New York, 208 Misc. 385, affd. 2 A D 2d 644; Kenney v. State of New York, 298 N. Y. 739, affg. 274 App. Div. 823, which revd. 189 Misc. 192.)
The claimants have failed to prove that the action of the State violated any duty or obligation owed by the State to these claimants. Whether the washout occurred as the result of cracks in the dike or as a result of the overtopping of the dike and the undermining of the fill behind the embankment wall, the water necessarily overtopped the original bank of the stream as it existed prior to any action by the State.
The action of the State either in commission or omission did not reduce the pre-existing flood protection and did not result in a diversion of waters onto claimants’ property.
The evidence establishes an unusually heavy runoff and the court finds that the damage suffered by these claimants was the result of flooding from an act of Glod and not from negligence of the State of New York. The claims must be and hereby are dismissed. Let judgment be entered accordingly.