C. B. GARNER and Thelma Garner,
Appellants,

v.

Abraham RITZENBERG, Milton Ritzenberg,
Saul Ritzenberg, and Sidney Z. Mensh &
Co., Inc., a body corporate, Appellees.

No. 2659.

Municipal Court of Appeals for the
District of Columbia.

Argued Jan. 4, 1961.

Decided Jan. 31, 1961.

Norman H. Heller, Washington, D. C., with whom Morton Kudysh, Washington, D. C., was on the brief, for appellants.

Leonard C. Greenebaum, Washington, D. C., with whom Lewis Jacobs, Newton Frohlich and J. H. Reis, Washington, D. C., were on the brief, for appellees. Sidney S. Sachs, Washington, D. C., also entered an appearance for appellees.

Before HOOD and QUINN, Associate Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code, § 11–776(b).

CAYTON, Acting Judge.

Plaintiffs brought this suit to recover the value of personal property destroyed when their basement apartment became flooded after a heavy rain. At the close of their evidence the court directed a verdict for the landlords ruling that the intensity of the rain was an act of God creating conditions they could not have foreseen or obviated, thus absolving them of liability. Plaintiffs appeal.

The evidence was as follows. The wife testified that she and her husband rented the apartment in February 1959 after inspecting it and finding it in seemingly good condition. At the time of inspection the resident manager said "he had never been bothered with any water there." The question was apparently posed to the manager because the husband was apprehensive about the problem due to the location of the building at the intersection of two streets, both of which run downhill and converge at the corner where the building is situated. The ground right outside the

building is, according to the wife, level close by but "there is a hill" that "comes towards" it; and according to the resident manager the property is not on level ground but "is graded from both streets down" with the building "about five feet below street level." The windows are in wells extending two feet below the surface of the ground.

Soon after plaintiffs moved in, on March 3, 1959, the apartment floor was covered with water during a rain. The water entered through the windows and at the bottom of the wall. The amount was not great that time and was taken care of by mopping; the only damage was to rugs, which were cleaned and dried. The management was notified of this incident, and the resident manager made some repairs on the walls.

Later, on May 23, 1959, a heavy rain occurred which produced a "flash flood" great enough to move cars in the street. The manager, who was the only witness to street conditions at the time, said that when "the sewer could not take it then it came in, it just came on in and got over the streets right on down to this area where the apartment was *and it was just like a valley* and it hit those windows and in it went, and in the windows went." (Emphasis added.)

Plaintiffs were not at home at the time. Their sixteen-year-old son testified that he was able to get out just ahead of the rush of water but couldn't save anything. The force of the incoming water broke many panes of glass in the windows and accumulated to some six feet, destroying all of plaintiffs' belongings. There was also testimony by other residents of the building that two prior tenants of the apartment had been bothered by inflow of water.

Our question is whether upon the facts just recited plaintiffs made out a prima facie case sufficient to place on defendants the burden of proceeding with answering evidence. The trial court expressed the opinion that however negligently the repairs were made after the rain of March 3, the proximate cause of the damage on May 23 was not the result of seeping water which any amount of repairs could have prevented, but was by an intense rain amounting, as a matter of law, to an act of God which defendants were not bound to foresee. The trial court also rejected the argument of plaintiffs' counsel that there was negligence in the construction or maintenance of the building which created the danger of damage by an unusually heavy rain.

Most courts flatly hold a rain of unusual amount is not an act of God.[1] In one case where a rain had caused a landslide along a railroad cut resulting in a train wreck the Supreme Court said:

> "Extraordinary floods, storms of unusual violence, sudden tempests, severe frosts, great droughts, lightnings, earthquakes, sudden deaths and illnesses, have been held to be 'acts of God;' but we know of no instance in which a rain of not unusual violence, and the probable results thereof in softening the superficial earth, have been so considered."[2]

We take judicial notice that rains of heavy intensity and average duration are occurrences of common experience. This event was described as a flash flood. People often use that expression in describing accumulations of rain water running off along natural or artificial contours of the ground; but that imports no particular legal significance. Such events, though infrequent, are to be expected.

1. See, e. g., Sturges v. Charles L. Harney, Inc., 165 Cal.App.2d 306, 331 P.2d 1072; Christman v. State, 189 Misc. 383, 70 N.Y.S.2d 12; Gibson v. State, 187 Misc. 931, 64 N.Y.S.2d 632.

2. Gleeson v. Virginia Midland Ry. Co., 140 U.S. 435, 439, 11 S.Ct. 859, 861, 35 L. Ed. 458, 462.

They do not create the widespread devastation commonly associated with earthquakes, tornadoes, hurricanes or extraordinary floods. The occasional filling of low-level or basement areas by rain water is a probable and foreseeable result of a heavy rain. To classify it as an act of God is an unwarranted extension of that doctrine not supported by the authorities.

 The real issue was whether defendants were negligent in the construction or maintenance of premises likely to be inundated during heavy but foreseeable rainfalls. We are satisfied that there was enough testimony to make out plaintiffs' prima facie case. The evidence was somewhat random and disconnected, and was not presented in elaborate or scientific detail; but the essentials were there.

There was also in evidence the District of Columbia Housing Regulations proscribing the maintenance of dwellings in such manner as to result in the very kind of situation we have here.[3] The United States Court of Appeals for this circuit has recently held these regulations impose a statutory duty upon landowners to care for their property in compliance with them, and that the breach of such duty is at least evidence of negligence in a civil action by the tenant. Whetzel v. Jess Fisher Management Co., 108 U.S.App.D.C. 385, 282 F. 2d 943, 950. There it was also held that actual knowledge of the defect is not required in order to establish liability, but that it is enough if in the exercise of reasonable care the landowner should have known of it.[4]

Defendants urged and the trial court agreed that no precautionary measures would have prevented the injury that occurred here. We disagree. It was known that an ordinary rain had produced slight seepage of water, and this made it logical and reasonable to expect that a heavy rain combining with the grading of the premises would produce a great accumulation. It would seem that appellees' position cannot be sustained without saying in effect that the greater the rain the smaller the duty. This proposition we reject. If the trouble could not have been remedied by suitable corrective measures then as was said in Whetzel, the landlord was under the duty of "terminating use of the premises as a place of human habitation."

Reversed with instructions to award a new trial.

---

3. Housing Regulations § 1203. "The owner of any premises used in whole or in part for residential purpose shall cause the yard or area at such premises to be graded and paved so that all drainage shall flow freely from all parts of it into such sewer traps as may have been provided for that purpose, or if there be none, shall flow away from any inhabited building on such premises."

§ 2604. "Yard spaces and other open areas appurtenant to a residential building shall be so graded by the owner as to avoid the accumulation of water."

4. We mention, in fairness to the trial judge, that the Whetzel case was decided a couple of months after this case was tried.