■ BERT COOK et al., Appellants, v. STATE OF NEW YORK, Respondent. (Claim No. 35064.) WILLIAM J. KANE et al., Appellants, v. STATE OF NEW YORK, Respondent. (Claim No. 35069.) — Appeals from judgments entered on a decision rendered after trial in the Court of Claims. Claimants are the owners of land on each side of State Highway Route 11 in Broome County damaged by flood waters from Castle Creek following a heavy storm October 30, 1955. The claims are based on the theory that changes made by the State in 1927 in one bank of the stream were responsible for the damage to their property. The Court of Claims dismissed both claims after a trial (26 Misc 2d 1). The highway in the area runs north and south and the creek flows southerly and generally parallel to the road. Some 400 or 500 feet north of the claimants' property (Kane on the east side of the road and Cook on the west side) the stream which to that point has flowed east of the road, crosses under a bridge to the west side and turns to continue its southerly flow. At the angle at which

the stream changed its course from south to west and passed under the bridge, the bank had been eroded on the south side of the bend so as to form a loop some 70 to 80 feet to the south, which the water in the stream followed before passing to the west under the bridge. To prevent the further extension of this erosion, and to straighten the flow of the stream westerly under the bridge, the State in 1927 installed a reinforcing revetment or retaining wall about 300 feet long and from time to time strengthened and repaired this installation. The storm of October 30, 1955 was one of unusual severity and intensity. From three to six inches of rain fell during the day. There is proof of washouts and inundations along the stream for several miles north of the site of claimants' property. About 15 miles of Route 11 was closed to traffic. The flood waters washed out a part of the revetment or retaining wall installed by the State at the curve in the stream. The stream overflowed by two feet the top of the wall which was generally of the same height as the adjacent natural banks. It broke through the retaining wall and revetment making a gully 15 feet wide, 4 to 6 feet deep and 25 feet long. It is claimants' theory that the State became responsible for damage to their land, having undertaken to change the course of the stream. This change is alleged to have contributed to the damaging flow on their land. It is further their theory that the negligent construction and maintenance of the wall were responsible for the break in the installation and that the break itself increased the flow on their land. We agree with the Court of Claims that neither of these theories has been established. The installation itself could be found to have had no effect in either causing or increasing the flow of water from the stream over claimants' lands. These lands were in the natural flood plain of the stream. If it overflowed its natural banks at the bend where it turned sharply to the west, the overflow would normally move in the direction of claimants' lands. It has not been satisfactorily demonstrated how the wall and revetment, intended to keep the stream in a more direct channel in turning westerly, could have increased its flow or accelerated its movement. The proof of a careful and expert observer was that the flood water exceeded by two feet both the top of the normal bank and the State's installation. Testimony in the record shows the high water left marks on adjacent trees and shrubs which gave adequate basis for the Court of Claims to find the water topped the installation by this much. Nor is there any ground to disturb the finding that the nature of the construction did not accelerate the flow or increase the damage to claimants' lands. The wall and revetment were intended primarily to prevent further erosion. They were not disturbed or broken through for 27 years, until the unusual storm caused a flow of force great enough to wash away heavy material, including reinforcing rods which had been installed to hold concrete bags, one of which was found "all wrapped around a tree". On the whole record it seems clear that the flow generated by this storm would have caused as much or more damage to claimants' lands if the State had not undertaken to strengthen the bank and improve the flow. This is not a case of damage by water impounded by an installation that breaks and increases the flow of water. It is rather an instance of damage by a flood which swept over and through an installation designed to prevent erosion of a bank. We are of opinion that the decision of the Court of Claims was not against the weight of evidence. Judgments and orders unanimously affirmed, without costs. Present — Bergan, P. J., Gibson, Herlihy, Reynolds and Taylor, JJ.