■ PRASHANT ENTERPRISES, INC., Appellant, v STATE OF NEW YORK, Respondent. [614 NYS2d 653] —Mercure, J. P. Appeal from a judgment in favor of defendant, entered November 4, 1992, upon a decision of the Court of Claims (Hanifin, J.).

Claimant operates a Quality Inn motel on property (hereinafter claimant's property) fronting on State Route 11 in the Town of Kirkwood, Broome County. Stratmill Creek flows in a generally westerly direction directly in front of claimant's property, along the north side of the highway. Beyond the west sideline of claimant's property, the creek continues for a short distance along the edge of the highway on the south side of adjoining property owned by Ralph Wood and then angles to the northwest, crossing the southwest corner of the Wood property and then traversing the "Country Bob" property, which adjoins the Wood property to the west. Except for two parallel culverts* installed to permit access to claimant's property from the highway, the six-foot-deep creek channel is open along claimant's property.

In May 1985, Wood made application to the State Department of Transportation for a permit to enclose within a seven-foot-diameter pipe a portion of the creek traversing his property, to connect with an existing pipe traversing the Country Bob property. Despite the opinion of State drainage engineer Sebastian Parasiliti that the proposed pipe would cause flooding on the average of once every five years, the application was approved, the permit issued and the pipe installed. Following installation of the pipe, the creek continued downstream in an open channel for a distance of 80 feet beyond the west sideline of claimant's property and then entered the pipe, which, together with the existing pipe on the Country Bob

---

* The culverts were elliptical in shape, each measuring over 10 feet from side to side and nearly seven feet from top to bottom. They extended for a distance of approximately 35 feet.

property, extended for a total length of 370 feet. On July 31, 1986, rainfall caused the creek to overflow and water to accumulate to a depth of approximately 1.5 feet on claimant's property. Claimant brought this claim to recover for the resulting damages upon the theory that the pipe installed on the Wood property created a "bottleneck", which caused the water to back up onto claimant's property, and that the State was negligent in issuing the permit to Wood and authorizing the installation of the pipe.

Trial on the issue of liability took place in May 1991, at the conclusion of which the Court of Claims found the State negligent in permitting Wood to install a pipe of inadequate size in the stream channel, which negligence was a proximate cause of claimant's damages. It also determined that claimant was negligent for having cut a notch in the bank of the creek in front of its property, thus allowing a path for the swelled waters within the creek to escape. The extent of claimant's comparative fault was deferred to the subsequent trial on the issue of damages, which was conducted in May 1992. Following claimant's submission of proof of causation and damages, and notwithstanding its prior determination, the Court of Claims concluded that the flood must be considered an act of God and that any negligence on the State's part was not a proximate cause of claimant's damages. The Court of Claims accordingly dismissed the claim, prompting this appeal by claimant.

Initially, we agree with claimant that the Court of Claims erred in its characterization of the storm and subsequent flooding as an act of God. Fundamentally, an act of God is an unusual, extraordinary and unprecedented event (see, *Greeley v State of New York,* 94 App Div 605, 607; *Resnick Co. v Nippon Yusen Kaisha,* 39 Misc 2d 513, 514; *Cook v State of New York,* 26 Misc 2d 1, *affd* 20 AD2d 585; *Christman v State of New York,* 189 Misc 383, 387). Additionally, an act of God denotes "those losses and injuries occasioned exclusively by natural causes, such as could not be prevented by human care, skill and foresight. * * * If there be any co-operation of man, or any admixture of human means, the injury is not, in a legal sense, the act of God" (*Michaels v New York Cent. R. R. Co.,* 30 NY 564, 571; *see, Daly v State of New York,* 226 App Div 154, 157; *Woodruff v Oleite Corp.,* 199 App Div 772, 773; *Greeley v State of New York, supra; Towey v State of New York,* 12 Misc 2d 95, 99). The defendant has the burden of proving that there was an act of God and there was no contributing negligence (*Barnet v New York Cent. & Hudson*

*Riv. R. R. Co.,* 222 NY 195, 198; *Michaels v New York Cent. R. R. Co., supra; Resnick Co. v Nippon Yusen Kaisha, supra,* at 514-515). The sole trial evidence adduced on the issue showed that the total precipitation on July 31, 1986 was 1.54 inches, which, although a heavier rainfall than usual, was by no means extraordinary or unprecedented. In fact, the evidence that the storm produced a water flow of 300 cubic feet per second (hereinafter cfs) indicates that it was less than a five-year storm (the most intense storm to occur in a typical five-year period), which would produce an estimated volume of 580 cfs of water.

We further conclude, exercising our authority in a nonjury trial to "weigh the probative force of the conflicting evidence and the relative strength of conflicting inferences that may be drawn therefrom, and then grant the judgment which upon the evidence should have been granted" *(Kandrach v State of New York,* 188 AD2d 910, 912-913), that the State's negligence was the sole proximate cause of the damage to claimant's property. It is undisputed that the pipe installed on the Wood property had a capacity sufficient to accommodate, at most, a five-year storm, and claimant's expert, Edwin Gent, testified that proper design for a commercial area mandated a culvert sufficient to accommodate at least a 25-year storm. To put the deficiency into perspective, the twin culverts in front of claimant's property had a capacity of 1,000 cfs, sufficient for the 970 cfs flow from a 25-year storm, whereas the capacity of the Wood pipe was only 200 cfs, one fifth thereof.

Although the State is correct in its contention that the existing pipe on the Country Bob property (with the same 200 cfs capacity) would have caused a bottleneck even if the Wood pipe had not been installed, because of the additional distance of that bottleneck from claimant's property and the relative elevations of the properties, Gent opined that the flooding would not have extended to claimant's property absent installation of the Wood pipe. In view of the fact that Parasiliti performed no hydrology studies and took no elevations of the respective properties, and thus had no idea of the direction of flow of the flood waters, we reject his contrary opinion that the same area would have been flooded in either event. As a final matter, we agree with claimant that there is insufficient record support for the Court of Claims' conclusion that a "v-shaped" cut in the creek bank in front of claimant's property was a proximate cause of any part of the damage.

In view of the foregoing and our conclusion that, on this record, the State was solely liable for claimant's damages, we

remit the matter to the Court of Claims for determination of claimant's actual damages upon the proof previously adduced.

White, Casey, Weiss and Peters, JJ., concur. Ordered that the judgment is reversed, on the law and the facts, with costs, it is adjudged that the State's negligence was the sole proximate cause of claimant's damages and matter remitted to the Court of Claims for a determination of claimant's damages.